567 So.2d 451 (1990)
DIAMOND R. FERTILIZER and Seibels Bruce Group, Appellants,
v.
Jimmy L. DAVIS, Appellee.
No. 88-2251.
District Court of Appeal of Florida, First District.
August 30, 1990.
*452 H. George Kagan of Miller, Hodges, Kagan & Chait, P.A., Deerfield Beach, Jonathan *453 L. Alpert and Steven Scott Stephens of Alpert, Josey & Grilli, P.A., Tampa, and B.C. Pyle, Orlando, for appellants.
Irvin A. Meyers, Frederic M. Schott, Howard G. Butler, and Steven M. Meyers of Meyers and Mooney, P.A., Orlando, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a workers' compensation order awarding permanent total disability benefits, benefits called for in a life care plan, past attendant care, and attorney fees. The employer and carrier (E/C) contend: (1) the claim was barred by the statute of limitations; (2) the judge erred in excluding medical evidence explaining medical test results after reopening the hearing to receive the results; (3) competent, substantial evidence does not support the award of the life care plan and the selection of the home care option; and (4) the judge abused his discretion in awarding attorney fees of $800,000.
Claimant Jimmy Davis, age 35, worked for the employer Diamond R. Fertilizer from June 1980 until July 1982. His job was cutting and dumping bags of fertilizer into a mixing machine. A year after he started working at employer's plant, claimant began noticing physical changes and experiencing difficulty with balance and coordination. The employer sent claimant to Dr. Oswald Saavedra, who was unable to determine the cause. Dr. Saavedra testified by deposition that he suspected claimant had either cerebellar degeneration, caused by alcohol intake, or multiple sclerosis (MS). Dr. Nagui Khouzam, who also examined claimant, believed claimant had peripheral neuropathy caused by alcohol abuse.
Claimant continued to work at the plant until July 1982 when, as a result of his worsening condition, he was unable to work and was let go. Thereafter, claimant moved in with his sister, Marva Foster, who cared for him until November 1982 when he was admitted to a nursing home. Claim was filed for permanent total disability benefits, determination of average weekly wage, medical treatment, attendant care, penalties, interest, attorney fees, and costs.
Three medical experts testified as to possible causes of claimant's injury. Dr. Leon Prockop, a neurologist, testified that claimant had olivopontocerebellar degeneration, spinal cerebellar degeneration, or MS. He indicated that a magnetic resonance imaging (MRI) scan would be helpful in determining whether claimant had MS. He stated that MS was not a likely diagnosis because claimant did not have a history of exacerbation and remission characteristic of MS, and because of his age, his race, and his residence in Florida. On cross-examination, he opined that toxic exposure possibly could have caused claimant's condition but probably did not.
Dr. Stanley Haimes, a specialist in occupational medicine, testified that MS was the most likely diagnosis, followed by oligopontine degeneration, and least likely was manganese toxicity. He could not determine within a degree of reasonable medical probability, the diagnosis of claimant's disability. However, he stated that the MRI test would give a definite answer to the cause of claimant's condition within a medical certainty. After noting that neither he nor Dr. Prockop in all of their experience and research have found a reported case of manganese toxicity, Dr. Haimes concluded that the injury was probably not related to his exposure to chemicals at work.
Dr. Rasheed Myint, with specialization in industrial medicine, testified by deposition that manganese poisoning was the most likely diagnosis, but that he could not rule out MS without referring claimant to a neurologist. Dr. Myint stated that an MRI study would be helpful.
Shortly before the hearing, the parties made several unsuccessful attempts to perform an MRI test. All three medical experts testified that MRI test results would be helpful if not conclusive in determining the nature and cause of claimant's injury. Ultimately, a successful MRI was achieved. There is a dispute in the record as to whether the parties knew or should have known about the successful test before the hearing. At the hearing, claimant's counsel *454 affirmatively represented that no MRI had been successfully performed. The hearing then proceeded upon the belief that the test had not been performed.
After the merits hearing, E/C's counsel discovered that the MRI had in fact been performed and filed the report of the test results with the court. Counsel for the E/C moved to open the evidence for receipt of the test results and expert testimony interpreting the same. Claimant's counsel objected because the parties had rested. Claimant's counsel observed that the report indicated the MRI test was done and results were dictated seven to ten days prior to the hearing. However, the record reveals that neither the doctors nor the lawyers knew the test was completed until after the hearing. Dr. Haimes called the E/C's attorney the day after the hearing and told him that he found the report in his mail that day.
The judge ruled that the MRI test results would be admitted but refused to accept any explanatory or rebuttal testimony. He granted claimant's motion to quash the taking of the deposition of Dr. Pearl, whom the E/C intended to depose for the purpose of interpreting the MRI test results, and ruled that the deposition would not be admitted if taken. The deposition was, nevertheless, taken and is in the record on appeal pursuant to an order granting the E/C's motion to complete the record.[1]
On June 3, 1988, a hearing on attorney fees was held. The judge sent a letter to the attorneys in advance, stating that no testimony regarding life expectancy would be received at the attorney fee hearing because the proper forum for presenting that evidence was the merits hearing. The E/C asked for and was denied leave to present testimony of an actuary and underwriter on the issue of life expectancy. The judge also refused to consider the E/C's entitlement to a social security offset as that issue relates to attorney fees.
The judge entered an order finding that claimant suffers from a central nervous system disorder which was caused by prolonged exposure to manganese and other toxic chemicals in the course of his employment with the employer. The order required the E/C to pay permanent total disability benefits, to provide all of the benefits called for in the life care plan prepared by Ms. Bell, to pay attendant care costs to claimant's sister for her past service, and to pay attorney fees of $800,000 and costs.
As to issue one, the judge correctly held the compensation claim was not barred by the statute of limitations. Section 440.19(3), Florida Statutes, tolls the statute of limitations where the claimant is incompetent and has not been appointed a guardian or other authorized representative. The test for determining whether a claimant is incompetent is whether he is so unsound of mind that he could not manage his ordinary affairs. Thomas v. Westinghouse Electric and Manufacturing Co., 160 Fla. 687, 36 So.2d 377 (1948); Bing v. Ocala Cleat Co., 383 So.2d 709 (Fla. 1st DCA 1980).
Contrary to the E/C's contention, the fact that claimant was allowed to testify at the hearing and was not appointed a guardian does not imply competency of the claimant. There is no authority to deny an incompetent individual the right to testify so long as he is capable of being understood and capable of testifying truthfully. § 90.603, Fla. Stat.
In the instant case, claimant had not been appointed a guardian or other authorized representative, and the trial court's determination that claimant was so unsound of mind that he could not manage his ordinary business affairs is supported by the evidence. The statute of limitation was therefore tolled.
On the second issue, the judge erred in reopening the hearing to accept the MRI test without allowing in evidence expert testimony interpreting the test. A judge has broad discretion to reopen a case; however, his reopening of the case to accept *455 the MRI test without accepting explanation of the test results by a medical expert was arbitrary and capricious. The deposition is new evidence which was not available until the results from the MRI test were found. The MRI test is a technical test which is not easily understood. Expert testimony interpreting and explaining the test results is necessary and should be allowed in evidence. On remand other evidence, if any, that the parties wish to offer bearing on the MRI results should also be allowed.
We will rule on the other issues raised for the guidance of the court and parties in further proceedings. Adoption of the life care plan was error. This case is markedly similar to Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862 (Fla. 1st DCA 1988), review denied, 544 So.2d 199 (Fla. 1989). In Aino's, this court reversed a workers' compensation order placing a rehabilitation service company in charge of overseeing and supervising claimant's medical and nursing care based on the testimony of the rehabilitation counselor where all other witnesses indicated that claimant's current medical care was satisfactory. As this court noted (533 So.2d at 864):
The award is patently erroneous insofar as it purports to give a rehabilitation company authority to oversee and supervise claimant's medical and nursing care. Such responsibility rests with a claimant's treating physicians. Furthermore, although Forman was apparently competent to testify concerning his rehabilitation services, his testimony was not sufficiently substantial to provide the sole support for such a far ranging award of rehabilitative oversight and authority.
In the instant case, Jewell Bell, the rehabilitation counselor, established a program for medical treatment which, if the E/C chose to buy her services, would give her the discretion to oversee and supervise claimant's medical and nursing care. Even if the E/C does not use her services, they are still bound by her treatment program. The responsibility for establishing a treatment plan rests with a claimant's authorized physicians. Although Ms. Bell may be competent to testify, her plan, like the plan in Aino's, supra, was supported solely by her own testimony rather than the testimony of any treating physician or primary care physician.
The award of benefits in Ms. Bell's life care plan are also unsupported. By adopting Ms. Bell's plan as a whole, the judge abdicated his responsibility for determining which benefits are medically necessary. Section 440.13(2), Florida Statutes, provides that an E/C must provide "medically necessary" benefits. The claimant's need must be clearly established. If the claimant's need is readily apparent, nonmedical evidence may provide adequate support for such an award. Otherwise, medical evidence as to necessity will ordinarily be required. Aino's, supra. In the instant case, the life care plan, which the judge adopted in its entirety, included home care plus the award of a $650 television set, a $350 videocassette recorder, a specially-equipped $28,000 van, a special $3,000 bed, a $2,000 whirlpool, a $960 hydraulic lift, and a $3,000 environmental control unit. The judge made no finding of medical necessity for the benefits. Although the judge's selection of the home care option was proper since the evidence demonstrated that claimant needed total care, the judge should have awarded only those medical benefits supported by evidence of medical necessity.
Finally, the judge erred in refusing to hear testimony on diminished life expectancy and social security setoffs in connection with the determination of benefits awarded as a basis for the award of attorney fees. The judge's ruling that since the issue of life expectancy was raised at the hearing on the merits, it could not be raised at the hearing on attorney fees, was error. Champlain Towers v. Dudley, 481 So.2d 532, 534 (Fla. 1st DCA 1986).
In the instant case, the E/C were particularly prejudiced by the court's refusal to hear evidence on life expectancy since the medical experts testified that claimant had a reduced life expectancy, and there is no testimony to the contrary. See Olson v. Wellcraft Marine Corp., 540 So.2d 878 *456 (Fla. 1st DCA 1989) (reversible error for judge of compensation claims to reject unrefuted testimony of medical experts). At the attorney fee hearing, economist Dr. Fred Raffa testified to the present value of the costs set out in the life care plan prepared by Jewell Bell. He based the amount of benefits on a 34-year life expectancy as determined by a United States life table. The E/C objected to both Ms. Bell's testimony as to cost and Dr. Raffa's reliance on the cost set out in the plan, and his use of a 34-year life expectancy. The judge overruled both objections.
The judge based his determination of claimant's life expectancy on Dr. Raffa's testimony. Dr. Raffa used a United States life table to determine the present value of the cost of the life care plan and admittedly did not use tables designed to determine the life expectancy of a paraplegic or a quadriplegic. Dr. Raffa also testified that an actuary would be better able to determine claimant's life expectancy.
The judge also erred in refusing to consider the social security setoff in the determination of attorney fees. The statute providing for offset against an employer's workers' compensation obligations to the extent that the injured employee was receiving federal social security benefits, is self-executing. Department of Public Health, Division of Risk Management v. Wilcox, 543 So.2d 1253 (Fla. 1989).
Accordingly, we reverse and remand with instructions for the judge of compensation claims to receive expert testimony explaining the MRI test results as bearing on the issue of causation and compensability. Thereafter, in the event the judge finds the claimant's condition compensable, he is to order only those medical benefits supported by evidence of medical necessity and to redetermine the award of attorney fees after taking evidence regarding an appropriate life expectancy, costs, and social security offset.
NIMMONS and ZEHMER, JJ., concur.
NOTES
[1] The gist of the deposition of Dr. Pearl, a pathologist, is that the MRI test results (1) showed MS, and (2) were inconsistent with manganese poisoning.