576 So.2d 833 (1991)
POLK COUNTY BOARD OF COMMISSIONERS and Home Insurance Company, Appellants/Cross-Appellees,
v.
Emmett F. VARNADO, Appellee/Cross-Appellant.
No. 90-384.
District Court of Appeal of Florida, First District.
March 13, 1991.
Rehearing Denied April 18, 1991.
*835 James H. Smith, Marlow, Shofi, Smith, Hennen, Smith & Jenkins, Tampa, for appellants, cross-appellees.
John D. Kaylor, Winter Haven and Bill McCabe, Shepherd, McCabe & Cooley, Longwood, for appellee, cross-appellant.
WOLF, Judge.
The employer/carrier (E/C) in this workers' compensation case appeals an order in which the judge of compensation claims (JCC) directed the E/C to 1) purchase a lot and build a wheelchair-accessible home for the claimant as opposed to modifying claimant's existing home; 2) provide all of claimant's monthly water, sewer and electrical charges as well as paying for the cost of one telephone in the home; 3) provide all yard and home maintenance; 4) provide the services of an interior decorator; 5) pay for all home furnishings; 6) provide one-half of the gasoline for the handicap-equipped van. The E/C asserts that the JCC also erred in finding that the claimant is entitled to have the right to select any future attendantcare provider, occupational therapist, or nurse. We find some merit in all of appellant's contentions and reverse as to those issues.
Claimant, Varnadoe,[1] asserts on cross appeal that the JCC erred in the amount awarded for attendant-care benefits from May 29, 1972, to December 13, 1989. We find no merit in this contention and affirm as to this issue.
Claimant was involved in a compensable industrial accident in July 1969, in which a 1,500 pound mower fell on him, rendering him paralyzed from his waist down. In April, 1970, the claimant filed a claim for compensation benefits seeking modification of the home in which he was residing and some type of attendant care or home assistance. In June 1971, a hearing was held in which Judge Leonard Blankner received *836 testimony from several doctors and therapists who had treated or seen the claimant in regard to his disability. There was a large amount of testimony received regarding the type of modifications which would be needed to his home, and the type of therapy and attendant care which would be required to meet the claimant's needs. On October 11, 1971, Judge Blankner entered his compensation order which found in part as follows:
1. Employer/carrier shall pay Aleene Varnadoe, claimant's wife, the sum of forty (40) dollars per week commencing October 31, 1969, until March 8, 1971; and at the rate of sixty (60) dollars per week until the date a substitute attendant may be obtained, as ordered subsequently, or the home modification is completed, whichever first occurs without, however, any penalty or interest.
2. Employer/carrier is required to provide funds for modification of the residence premises of Emmett F. Varnadoe and Aleene Varnadoe for the construction of a carport, a new or additional bathroom, enlargement of hallway to permit safe ingress, passage, and egress of a wheelchair; to provide ramps permitting two way entry and departure; to modify the kitchen to make the same convenient and safe for Mr. Varnadoe's use; and to construct a dressing closet and enlarge claimant's bedroom....
3. In the event Mrs. Varnadoe returns to outside employment, substitute companion-attendant care is required to be furnished so that at no time will Mr. Varnadoe be required to be in his residence without an adult for more than two hours unattended. The cost of such companion-attendant shall not exceed sixty (60) dollars per week; and such cost shall terminate either upon completion of alterations and modification of claimant's presently owned residence, or in the alternative, housing arrangements suitable to the claimant's needs are otherwise met.
Judge Blankner gave the employer/carrier an alternative wherein it could elect to advance funds for the claimant in the amount of $8,500, which the claimant was to use, together with funds from the prospective sale of his residence, solely to construct a new residence suitable to his needs as a paraplegic. The E/C appealed this decision to the Industrial Relations Commission and the claimant cross appealed. The order was affirmed. The E/C filed a petition for writ of certiorari to the supreme court which was denied. On November 16, 1972, after the appellate process concluded, the employer/carrier issued a check for $8,500 to the claimant as an "advance against future medical and for the purpose of new housing." Prior to receiving the check, the claimant and his wife borrowed money and constructed a new home with a wide entrance door, an enlarged bathroom with an elevated tub and toilet seat, and a large bedroom door. They moved into the new home on September 3, 1972. They used the proceeds of the $8,500 check to assist in paying off the debt.
On January 19, 1988, claimant filed a petition requesting, among other things, attendant care and remodeling of claimant's home. On November 15, 1988, a hearing was held on these matters. There was testimony from a number of witnesses concerning the deterioration of claimant's health and the extensive care that his wife had to provide, including being called home from her job three or four times a week to aid her husband in various functions. There was also considerable testimony concerning the inadequacy of claimant's present residence to accommodate his needs. Following the hearing, the JCC entered an order which stated his finding that the E/C had not provided the claimant a handicapped home in conformity with Judge Blankner's 1971 order. That finding was not appealed.
The order appealed herein was entered on December 13, 1990, and addressed, inter alia, Varnadoe's claims for benefits and attendant care. The first issues raised by the appellant in this appeal involve benefits awarded pursuant to section 440.13(2)(a), *837 Florida Statutes. This section requires the employer to furnish the employee "such medically necessary remedial treatment, care and attendance by a health care provider and for such period as the nature of the injury or the process of recovery may require, including medicines, medical supplies, durable medical equipment, orthoses, prostheses, and other medically necessary apparatus." We will examine the propriety of the award of each benefit individually, following a brief discussion of the general state of the law concerning medical benefits.
The initial inquiry in determining the validity of an award of benefits pursuant to section 440.13(2)(a), Florida Statutes, is the employee's medical need for the benefit. Stables v. Rivers, 562 So.2d 784 (Fla. 1st DCA 1990). The JCC should only award those medical benefits which are determined to be a medical necessity. Diamond R. Fertilizer v. Davis, 567 So.2d 451 (Fla. 1st DCA 1990). An award of a benefit which would not improve claimant's condition or aid his recovery would be invalid. DeLong v. 3015 West Corp., 558 So.2d 108 (Fla. 1st DCA 1990). Further, prior to awarding medical benefits, the JCC must determine that the need for the benefit was necessitated by the compensable injury. Stables v. Rivers, supra.
The first point of contention herein concerns the requirement that the E/C purchase a lot and build a new home for claimant rather than modifying the existing home. The JCC based this ruling on the following:
(a) I accept the testimony of Gene R. Leedy, who testified that from an economic standpoint, it would be very poor economics to put even $10,000 into the Employee's home. Mr. Leedy testified that the home is actually of low quality construction, and that it would be more economically feasible to design a medium sized house for the Employee that serves all of his handicapped needs. Mr. Leedy further testified that it was his opinion that it would cost approximately $50,000 to make the necessary modifications to the Employee's existing home to incorporate the changes necessary to make the home a wheelchair accessible environment for the Employee.
(b) I have also taken into consideration the testimony of Luke Jarrell, a general contractor in Polk County, who testified that in his opinion, it would cost $31,377.00 to remodel the Employee's home to make it wheelchair accessible, not including the cost of adding central heating and air conditioning.
(c) I have taken into consideration the testimony of Cecil Mayse, who testified that it would cost $4,635.41 to put in central heating and air conditioning in the Employee's house, and therefore, the necessary modifications would cost $36,012.41 according to Mr. Mayse and Mr. Jarrell. These were rough estimates.
(d) I have also considered the testimony of William Beasley, a realtor in the Polk County area, who testified that there are other lots near the Employee's present house, that are for sale, at anywhere from $9,000 to $12,500.
(e) That based on the above-referenced testimony, and based on the numerous modifications that need to be made to the Employee's present existing home, I find that it would be more feasible, and in the best interest of both the Employee, and the Employer/Carrier, that the Employee have a new home constructed rather than a modification of the Employee's existing home.
The JCC then lists the specific items be required in order to provide the wheelchair-accessible environment necessary to accommodate the claimant. Among these items were criteria for the contents of a master bathroom, master bedroom, kitchen, laundry area, carport, and entrances. The E/C does not challenge the JCC's determination that special housing is a medical necessity or that the specific items listed by the JCC would be necessary to provide such an environment. Only the method of providing such a medically necessary environment is in dispute.
In Peace River Electric Corp. v. Choate, 417 So.2d 831 (Fla. 1st DCA 1982), this court upheld an award of a rent-free, *838 wheelchair-accessible, modular home supplied by the carrier to a claimant. The court in that case, however, noted the extremely unique circumstances of that case (claimant living alone in a dilapidated makeshift dwelling). The court found that nothing short of bulldozing the dwelling would serve to remedy the situation. Id. at 832. In Ramada Inn South Airport v. Lamoureux, 565 So.2d 376 (Fla. 1st DCA 1990), the court determined that the claimant's apartment could not be modified, and only then ordered the E/C to provide a different apartment with appropriate handicap-equipped facilities. In Lane v. Walton Cottrell Assocs., 422 So.2d 1023 (Fla. 1st DCA 1982), however, the E/C was able to fulfill its obligation of a wheelchair-accessible environment by modifying a rental home. In the instant case, there is no testimony which would indicate that claimant's home could not be modified.
The JCC based his requirement of a new house on his finding that it would be "poor economics" to remodel the existing facility, and it would be in the best interest of the parties to construct a new home. These factors do not equate to the unique circumstances in Peace River, supra, or Ramada Inn South, supra. Unless there is a specific reason that the existing home is totally inappropriate for modification, the E/C should have the option of modifying the existing residence in conformance with the medically necessary requirements. The JCC, in the instant case, therefore, erred in not allowing the E/C the option to modify the existing dwelling of the claimant.
The next item of contention between the parties is the JCC's decision to award as medical benefits all of claimant's monthly water, sewer, and electrical charges, as well as the cost of one telephone in the home. The JCC found that such an award is authorized by the decisions of Lane v. Walton Cottrell, supra, Peace River Electric v. Choate, supra, and Firestone Tire and Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980). The JCC reasoned that the E/C should be responsible for any cost associated with the wheelchair-accessible home. The JCC has misread these cases.
After an item has been determined to be medically necessary, an E/C may be required to provide for insurance and major maintenance for the facility to assure its continued availability. See Firestone Tire and Rubber Co., supra, and Applegate Drywall Co. v. Patrick, 559 So.2d 736 (Fla. 1st DCA 1990). The law does not require the E/C to be responsible for all expenses of operation, although costs uniquely attributable to the provision of a facility or service which is necessitated by an accident and found to be medically necessary, may be awarded. Firestone Tire and Rubber Co., supra. Absent unique circumstances, however, the carrier is not required to bear the costs of normal living expenses not necessitated by the accident. See Ramada Inn South Airport v. Lamoureux, supra; DeLong v. 3015 West Corp., 558 So.2d 108 (Fla. 1st DCA 1990).[2] Indeed, there is no showing in the instant case that the need for the utilities, including water, sewer and electrical, is caused by claimant's accident or that such items are medically necessary. See DeLong, supra. Simple convenience to the claimant will not suffice to support such an award. Aino's Custom Slip Covers v. DeLucia, 533 So.2d 862 (Fla. 1st DCA 1988), rev. denied, 544 So.2d 199 (1989). Utilities are generally considered basic necessities in every home in our society, and a claimant will have a difficult time demonstrating that necessity for such items is caused by the compensable accident such that they could be properly awarded as medical benefits.
On the other hand, there is evidence of medical necessity concerning the claimant's need for a telephone in that he is required to use a phone to contact his wife in order to receive medically necessary attendant care. While one may argue that a telephone is also a basic necessity in our *839 society, there is evidence which would support that the telephone is medically necessary in this particular case.[3] In light of the extreme reliance of the claimant on his wife and the unique circumstances of the instant case, we determine that the JCC did not abuse his discretion in awarding the base payment for one telephone as a medically necessary benefit.
In light of our previous reasoning, we also disallow the award of yard and home maintenance where there has been no finding by the JCC that such services are medically necessary nor any competent evidence which would support such a conclusion. DeLong v. 3015 West Corp., 558 So.2d 108 (Fla. 1st DCA 1990).
In DeLong, this court approved the denial of lawn maintenance services, saying, "Although claimant presented testimony from his treating physician to the effect that it was medically necessary for someone other than claimant to mow his yard, the physician admitted that avoiding yard work would not improve claimant's condition or aid his recovery." Id. at 109 (emphasis added). In the instant case, as in DeLong, there has been no evidence that providing lawn or house maintenance would in any way improve claimant's condition or aid his recovery. The appellee cites Stables v. Rivers, 562 So.2d 784 (Fla. 1st DCA 1990), as authority for the award of household services. In Stables, however, the claimant had done household chores prior to the accident which rendered her a paraplegic. Medical testimony from the physician in that case supported the need for an award of such services which were found to have been necessitated by the accident. In the instant case, there is no evidence that the claimant performed any household chores prior to the accident or that the need for such services arose as a result of the accident. Since there is no competent testimony that yard and home maintenance is necessary as a result of the accident, there is no support for such an award. Aino's Custom Slip Covers, supra.
The award of the services of an interior decorator and home furnishings also cannot stand. The JCC stated his findings as follows:
I find that the Employer/Carrier shall provide the Employee with an interior decorator for the purposes of furnishing Employee's home, and that all home furnishings be paid by the Employer/Carrier pursuant to the recommendations of an interior decorator. I base this finding on the following:
(a) The witnesses, in particular the Employee, the Employee's wife, Aleene Varnadoe, Catherine Teston, and Myra Chere, have testified that most of the furnishings in the Employee's home have been repeatedly soiled as a result of the Employee's incontinence; that it is important to maintain the home in a clean environment, and that it is medically necessary for the Employee to have new, clean furniture, with protective coverings, to protect the furniture from damage as a result of the Employee's lifelong incontinence.
(b) I further find that among the home furnishings medically necessary for the Employee, shall include, but shall not be limited to the following:
(1) A reclining chair.
(2) An electrical queen size bed with dual controls and separate elevations for each side of the bed, as testified to by Ken Chadwick.
(3) The purchase and installation of an overhead trapeze for the master bedroom as testified to by a number of witnesses, including Ken Chadwick, to enable the Employee to turn in bed while sleeping.
(4) A stove specifically constructed for handicapped persons. I find that this is a medical necessity in that the Employee has previously burned himself *840 while attempting to utilize the stove, and as a result thereof, the Employee has been limited to fixing himself cold meals due to the dangers involved in the Employee operating a conventional stove.
(5) A washer/dryer combination set that will enable the Employee to assist in laundry functions. I particularly find this is a medical necessity, so that the Employee can assist in the cleaning of clothes that the Employee soils as a result of his incontinence.
(6) Other particular appliances or furnishings recommended by an architect, physical therapist, or interior decorator, versed in the needs of a wheelchair-bound person provided that should a disagreement arise between the parties as to items in this paragraph, I shall resolve the disputes.
The E/C does not challenge the award of items specified in (b)(1)-(5) and, thus, concedes that there is competent substantial evidence to support a finding of medical necessity for those items. The E/C, however, does challenge the award of the interior decorator, the unspecified items of clean new furniture contemplated within section 25(a) of the JCC's order, as well as the speculative award of items to be determined in the future as contained in section 25(b)(6) above.
In Diamond R. Fertilizer v. Davis, supra, this court indicated that the responsibility for a treatment plan and all that goes with it, rests with the authorized physicians. The JCC may not delegate the responsibility for determining medical necessity to one who is not a health care provider. Aino's Custom Slip Covers v. DeLucia, supra. In this case, there is no evidence which would indicate that an interior decorator is medically necessary. None of the physicians testified as to such a need. While nonmedical testimony may support an award of the claimant's need when such need is readily apparent, ordinarily, medical evidence as to necessity will be required. Id. at 865. The need for an interior decorator as a medical necessity is not readily apparent. In addition, when the JCC asked if an interior decorator was needed, the attorney for the appellee replied, "Not really."
The appellee also cannot show new furniture as a medical necessity. While Ms. Chere and Ms. Testin both indicated that appellee needed new household furnishings, neither of them are health care providers as required by the statute, nor are they acting under the guidance or control of a health care provider. The medical necessity for such items, as with the medical necessity of an interior decorator, is not readily apparent. The fact that items are damaged or destroyed as a result of the compensable accident does not mean that replacements should be provided as medical benefits. In Romano v. South Range Construction Co., 8 Mich. App. 533, 154 N.W.2d 560 (Mich. Ct. App. 1967), a Michigan court determined that replacement for clothes destroyed in a covered accident could not be awarded as medical benefits, since the clothing had nothing to do with relieving the effect of the injury. While we sympathize with the plight of the appellee, we feel that the evidence does not support the award of an interior decorator or home furnishings.
The final dispute concerning benefits awarded pursuant to section 440.13(2)(a) involves the award of one-half of the gasoline for the handicap-equipped van.[4] The JCC stated that the E/C should provide one-half of the gasoline, but expresses no justification or reason for making such an award. Section 440.13(5), Florida Statutes (1988), outlines the responsibility of the E/C for transportation costs.[5] While case law interpreting section 440.13(5) indicates that the E/C may be held responsible for insurance and major maintenance which directly relate to the availability of the vehicle itself, there is no *841 showing that one-half of the gasoline is being used for medically necessary purposes; therefore, the award of one-half the gasoline for the claimant's van cannot be upheld.
The E/C also challenges the JCC's determination that in the event attendant care is to be provided by someone other than the claimant's wife, the claimant should have the right of personal choice for a nurse, occupational therapist, or other attendant. The judge's order in that regard was based on the testimony of Dr. McClane who testified as to the claimant's depression, and found that it would be in the claimant's best interest from a psychological standpoint to be able to personally select the person to provide his attendant care in the event that such care could not be provided by his wife.
In Robinson v. Howard Hall Co., 219 So.2d 688 (Fla. 1969), the Florida Supreme Court dealt with a provision of section 440.13, Florida Statutes, which requires an employer to furnish to an employee "such remedial treatment, care, and attendant care under the direction and supervision of a qualified physician or surgeon ... as the nature of the injury or process of recovery may require... ." Id. at 691. In Robinson, the supreme court stated, "The policy of the statute as we view it is to give the initial right of selection of a treating physician for an injured or sick claimant to the employer/carrier, but reserves in claimant the right to dispute such selection for good cause or reason and to seek substitution of that physician by a physician of claimant's choice, pursuant to due determination of the matter by the judge of industrial claims." Id. Under Florida Statutes, as interpreted by the supreme court in Robinson v. Howard Hall Co., therefore, the employer/carrier is to be given the first opportunity to make the selection of the attendant or nurse. Florida Statutes do, however, reserve to the claimant the right to reject such selection, require another authorization, or to seek authorization by the JCC for a physician of the claimant's own choice. Teimer v. Pixie Playmates, 532 So.2d 37 (Fla. 1st DCA 1988), rev. denied, 539 So.2d 475 (Fla. 1989).
There is substantial evidence in the record which would support the decision of the JCC concerning attendant care if there was a dispute between the E/C and the claimant at the present time concerning attendant care. Such a determination by the JCC, however, is premature because 1) there is no evidence that the wife will cease providing attendant care in the near future; 2) it is unclear what claimant's condition will be at the time such an eventuality may take place; and 3) there is no evidence that the E/C and the claimant could not agree on a mutually acceptable provider. We, therefore, find that the JCC's order allowing the claimant to choose his own attendant-care provider in the future is in error.
The claimant asserts on cross appeal that the JCC erred in the amount awarded for attendant-care benefits provided by claimant's wife from May 29, 1972, until December 13, 1989. The JCC found that the E/C failed to comply with the provisions of the 1971 order of Judge Blankner to provide a wheelchair-accessible house. The judge, therefore, determined that the E/C was still responsible for the $60 per week pursuant to the original order.
The claimant asserts that the award of attendant-care benefits should have been at rates commensurate with what others were paid from May 29, 1972, until December 13, 1989. The claimant argues that the award of attendant-care benefits is not based upon a modification of the 1971 order, but it is a new award of medical benefits found to be medically necessary, permitting these benefits to be awarded at the prevailing rate. The JCC, however, determined that the request for attendant-care benefits involved a modification of an existing order and that it was improper to grant such a modification retroactively.
We agree with the JCC that the relief requested was a request for modification of an existing order rather than a request for a new award of benefits and affirm his denial of a retroactive modification. See City of Miami v. Knight, 510 So.2d 1069 *842 (Fla. 1st DCA 1987), rev. denied, 518 So.2d 1276 (Fla. 1987).
Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion.
BARFIELD, J., concurs.
SMITH, J., specially concurring and dissenting with opinion.
SMITH, Judge, specially concurring and dissenting.
I concur in the majority opinion and decision with exception of that portion reversing the JCC's order allowing the claimant to select the person to provide attendant care in the event such care is not, or cannot be provided by the claimant's wife. This part of the JCC's order states:
(c) I further find that if attendant care in the home is provided in the future by persons other than the Employee's wife, Aleene Varnadoe, then the Employee shall retain the right of personal choice for such nurse, occupational therapist or other attendant care person. I specifically base this finding on the testimony of Dr. Thomas McClane, who testified that the psychological effect on the Employee, if the Employee's wife were unable to provide attendant care benefits for him, would be "devastating." I further specifically find that the Employee has severe depression, as testified to by Dr. McClane, and is acknowledged by virtually every person who has done an interview of the Employee, in connection with this case, including Myra Chere and Catherine E. Teston; therefore, I find that it would be in the Employee's best interest from a psychological standpoint, to be able to personally select the person providing the Employee attendant care in the event that such attendant care could not or is not, provided by Employee's wife... .
In my judgment, the state of the evidence before the JCC provides ample support for this ruling. I think it is implied, though not specifically stated in the order, that there may be occasions when the wife is temporarily away from the home or otherwise unable to provide attendant care for a short period of time. To require the claimant to consult with the E/C concerning her replacement on such occasions would simply add to his already nearly insurmountable burdens. This is obviously one of the things the JCC was attempting to avoid. I see no justification for interfering with the JCC's determination that the present award of the privilege of selecting someone to replace his wife as his attendant, either on a temporary or permanent basis, is necessary for the well-being of the claimant. I see nothing to be gained by a reversal of this provision except to allow the E/C to maintain the power of control and interference in some of the most sensitive aspects of claimant's personal life, and to add to the claimant's already innumerable difficulties the expenditure of time and effort, and the delay and anxiety that surely may be expected to result from the denial of his ability to choose his own attendants. In light of the evidence concerning the extent of the claimant's dependence upon the care of his attendant, I am appalled that the E/C has chosen to appeal this part of the JCC's order. I would affirm as to this provision.
NOTES
[1] It is not clear from the record whether the claimant's name is correctly spelled "Varnado" or "Varnadoe." Throughout this opinion, we will use the latter spelling.
[2] Loss of income is to be taken into account when awarding compensation benefits. Allowing for recovery of day-to-day expenses as medical benefits as well would provide for a duplicative award.
[3] Unlike other utilities, there is a base charge associated with the actual availability of the telephone which is unrelated to usage cost. As stated in Firestone Tire and Rubber Co. v. Vaughn, 381 So.2d 740 (Fla. 1st DCA 1980), there is no statutory authority for apportioning the actual cost of furnishing a medically necessary apparatus. In the unique circumstances of this case, the telephone was a medically necessary apparatus.
[4] The award to the claimant of a handicap-equipped van is not being challenged by the E/C.
[5] E/C has agreed that it is responsible for the claimant's reasonable or actual mileage or transportation to the health care provider.