940 So.2d 588 (2006)
FLORIDA HOSPITAL DELAND and AHS Compnet, Appellants/Cross-Appellees,
v.
Debra Van WAGNER-VICK, Appellee/Cross-Appellant.
No. 1D05-3596.
District Court of Appeal of Florida, First District.
October 31, 2006.
*589 Charles D. Hood, Jr. and Clay L. Meek of Smith, Hood, Perkins, Loucks, Stout, Bigman, Lane & Brock, P.A., Daytona Beach, for Appellants/Cross-Appellees.
Mark L. Zientz and Andrea Cox of the Law Offices of Mark L. Zientz, P.A., Miami, for Appellee/Cross-Appellant.
ERVIN, J.
Appellants, Florida Hospital Deland and AHS Compnet (employer/carrier or E/C), appeal from a final workers' compensation order awarding appellee Debra Van Wagner-Vick (claimant) certain compensation benefits, and claimant cross-appeals the denial of particular benefits. We summarily affirm all issues raised by the E/C except that relating to Issue IX, the award of temporary partial disability (TPD) benefits from the date of the accident, July 3, 2003, through August 29, 2003, the date of claimant's termination from employment, because, as she conceded, competent, substantial evidence does not support the finding that claimant established a loss in wage-earning capacity during such period. We reverse and remand as to all three issues raised in the cross-appeal.
In her cross-appeal, claimant first argues that the judge of compensation claims (JCC) erred in refusing to award claimant temporary total disability (TTD) benefits from the date her personal physician, Dr. Curt Rausch,[1] placed her on no-work status, or August 17, 2004, and continuing, because the JCC misinterpreted the law in concluding that claimant was not entitled to TTD benefits. The record discloses that, on July 3, 2003, immediately after she had experienced pain in her lower back while rising from a chair in the course of her employment, claimant reported the injury to her employer, and the employer shortly thereafter considered, based on the description claimant provided of the injury, that the injury was caused by claimant's idiopathic, personal condition, and it denied compensability of the claim. She thereafter sought the care of Dr. Rausch, and after consulting with him, she testified that she first then became aware that the job duties assigned to her that day, i.e., the lifting of heavy x-ray jackets, were the cause of her back injury.
Following the final hearing, the JCC determined that the injury was compensable. In this regard, the JCC relied on the testimony of claimant, her authorized physician, Dr. Rausch, and her independent *590 medical examiner (IME), Dr. Charles Kollmer, an orthopedist. The JCC denied, however, the claim for TTD benefits, finding that claimant, during the period of time for which benefits were sought, retained a wage-earning capacity, and in so doing he emphasized the opinion of Dr. Kollmer, who had released claimant to return to work with restrictions on March 30, 2004, after her separation from employment. In reaching his decision, the JCC accepted the opinion of Dr. Kollmer over that of claimant's authorized treating physician, Dr. Rausch, because the JCC did not consider Dr. Rausch had the expertise of either an orthopedic or a pain-management physician. Finally, the JCC concluded that "Dr. Rausch has not given clear or acceptable testimony with regard to the claimant's alleged temporary total disability status."
Although the rule is clearly established that the JCC may accept the opinion testimony of one physician over that of another, see Chavarria v. Selugal Clothing, Inc., 840 So.2d 1071 (Fla. 1st DCA 2003), the resolution of the issue of claimant's entitlement to TTD benefits does not turn on the JCC's prerogative as fact-finder to accept a particular expert's testimony, while rejecting another's, but rather on whether claimant should have reasonably relied on the instructions given her by her authorized treating physician. As this court observed in Garcia-Vina v. U.S. Holiday Health & Recreation, 634 So.2d 200, 201 (Fla. 1st DCA 1994):
This court has repeatedly held that even in the absence of medical evidence that a claimant was TTD or that claimant searched for but could not find work, TTD benefits should nevertheless be awarded where it is shown that claimant's physicians never communicated to the claimant that he or she was released to return to work. Indeed, TTD benefits may be awarded despite the testimony of a claimant's physician that claimant was able to perform work with certain restrictions, as occurred herein.
Similarly, this court held in Charles v. Suwannee Swifty, 622 So.2d 114, 115 (Fla. 1st DCA 1993), that, once claimant's physicians failed to inform her of her release to return to work, claimant could not be denied TTD benefits, "even assuming retrospective testimony that claimant could have worked during this period."
In the present case, Dr. Kollmer, who examined claimant on only one occasion, nearly five months before Dr. Rausch's examination of August 17, 2004, was hardly in a position to assess claimant's condition at that time. Based on the current information then given her, claimant could not reasonably be expected to ignore the directions of her treating physician to remain off work; therefore, the JCC erred in denying the claim for TTD benefits from August 17, 2004, and continuing.
Claimant also asserts that the JCC erred in denying the medical bills of Dr. Stephane Lavoie, an orthopedist, and Dr. Stephen Knight, an emergency-room physician. In refusing to authorize their care, the JCC noted that claimant had provided the two physicians an inaccurate history of the cause of her injury by relating its cause to her rising from her chair, which affected the reliability of the care provided by them. The JCC ruled their opinions were "not admissible as they fail to adequately address the issues of causal relationships and medical necessity." In so concluding, the JCC apparently misinterpreted the meaning of the term "medically necessary," as requiring, as a predicate for medical care to be deemed medically necessary, the attending physician must be aware of the cause of an employee's injury. Nothing in the *591 law of workers' compensation, however, expressly so states or reasonably implies such a restrictive interpretation.
Section 440.13(2)(a), Florida Statutes (2003), provides, in part: "[T]he employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require . . . ." Additionally, the statute's definition of the term centers on the provision of a medical service or supply, and says nothing about a treating physician's actual knowledge of the cause of a patient's injury. Section 440.13(1)(l) provides, in pertinent part: "`Medically necessary' or `medical necessity' means any medical service or medical supply which is used to identify or treat an illness or injury, is appropriate to the patient's diagnosis and status of recovery, and is consistent with the location of service, the level of care provided, and applicable practice parameters." Indeed, this court's case law mirrors the above statutory provisions by recognizing the appropriate test for the authorization of medical benefits "is whether the award would improve the condition caused by the accident or would aid in the recovery." Brown v. Steego Auto Parts, 585 So.2d 401, 403 (Fla. 1st DCA 1991). See also Polk County Bd. of Comm'rs v. Varnado, 576 So.2d 833, 837 (Fla. 1st DCA 1991); Delong v. 3015 W. Corp., 558 So.2d 108 (Fla. 1st DCA 1990).
The record is clear that the services of both Dr. Lavoie and Dr. Knight complied with the above requirements. In regard to Dr. Lavoie's care, Dr. Rausch, whom the JCC determined to be authorized, had referred claimant to the care of Dr. Lavoie, an orthopedist. An authorized physician's referral of an employee to the treatment of another health-care provider constitutes sufficient authorization for the treatment of the referred provider if the referral was made in the treating physician's own judgment, rather than at the claimant's request. N.W. Orient Airlines v. Gonzalez, 500 So.2d 699 (Fla. 1st DCA 1987). The record further establishes that Dr. Rausch exercised his own independent judgment in referring the claimant to the care of Dr. Lavoie. Based on the history claimant related to him of back pain extending into the right buttock and the right leg, and his review of an MRI of claimant's back, indicating the existence of disc disease, Dr. Rausch was concerned that claimant might in the future require an orthopedic surgical procedure, resulting in his referral of claimant to Dr. Lavoie.
As for the care of Dr. Knight, the record shows that because of intense pain in her back, the employer representative, Lori Adams, directed claimant to seek emergency care. Emergency care, under such circumstances, is ordinarily considered to be authorized. See Manz v. Manz, 518 So.2d 392 (Fla. 1st DCA 1987). Dr. Knight diagnosed claimant's condition as back strain, recommended orthopedic follow-up, and prescribed Percocet for pain. Clearly, such services must be considered medically necessary, meaning that they were designed to aid in claimant's recovery from the aggravating symptoms she was then suffering. Under the circumstances, we conclude the JCC erred as a matter of law in finding the care provided claimant by Drs. Lavoie and Knight was not medically necessary, and, consequently, in denying their medical bills for the services rendered.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HAWKES and WEBSTER, JJ., concur.
NOTES
[1] Dr. Rausch was later found to be authorized.