969 So.2d 1089 (2007)
Lemil DESIR, Appellant,
v.
NOUVEAU ASSOCIATES and Claims Center, Appellees.
No. 1D06-5943.
District Court of Appeal of Florida, First District.
October 30, 2007.
Rehearing Denied December 7, 2007.
*1090 Mark L. Zientz and Andrea Cox of the Law Offices of Mark L. Zientz, P.A., Miami, for Appellant.
Carlos D. Cabrera and A. Hinda Klein of Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A., Hollywood, for Appellees.
KAHN, J.
In this workers' compensation case, Lemil Desir, a catastrophically injured worker, sought an award of certain living expenses. The Judge of Compensation Claims (JCC) found that the expenses sought, water and utility bills, were not medically necessary under section 440.13, Florida Statutes, and denied the benefit. We reverse because our case law demonstrates that, under the facts as presented to the JCC, the employer/carrier (E/C) are responsible for paying the difference between what the claimant paid before the accident and post-accident living expenses attributable to the injury.

BACKGROUND
As a result of an industrial injury, admittedly compensable, appellant suffers permanent paralysis from the neck down. Appellees have provided normal medical and indemnity benefits and have, without necessity of a JCC order, purchased and built a home specifically designed to address Desir's unique needs as a quadriplegic. The E/C hold title to the real estate where appellant now lives.
Before the accident, Desir and his family lived in a two-bedroom apartment. He paid a total of $700 per month, which amount included water, sewer, and garbage fees. In addition, Desir paid his electric utilities bill directly. These facts are not in dispute. The E/C have stipulated that Desir's water and sewer bill in the new home averages $161 a month.
Appellant took the position that he is required under workers' compensation law to pay $700 per month toward his present living expenses, and that the $700 he pays necessarily includes water, sewer, and garbage. Desir agreed to pay that portion of the electric utility bill not attributable to the injury, and no dispute exists as to that. The E/C took the position that Desir should pay $700 per month, attributable solely to rent, and should also pay his water, sewer, and garbage, over and above the rent.
The issue, as Desir sees it, is whether the $700 a month includes water, sewer, and garbage bills, or whether that amount should be credited solely to rent, with Desir paying the utility bills. After hearing, *1091 the JCC entered an order finding that claimant's pre-injury "all inclusive rent" would not be dispositive of whether claimant's need for water and sewer has become a medically necessary benefit. As a result, the JCC attributed all of claimant's pre-injury payment of $700 to rent; found that water, sewer, and garbage were not medically necessary under section 440.13; and denied claimant's request for payment of these utilities.

ANALYSIS
On appeal, Desir does not dispute that the utilities at issue are ordinary living expenses. Instead, he argues that when an accident creates a situation rendering a claimant incapable of maintaining his cost of living before the accident, additional expenses should be viewed as uniquely attributable to the accident. Moreover, at the hearing below, Desir's counsel noted in closing argument that the medical necessity of utility service was not the issue before the JCC. The E/C take the position that each benefit under section 440.13 must be viewed individually and determined medically necessary. Because the JCC did not find medical necessity for the water, sewer, and garbage bill, appellees maintain that these items may not be awarded irrespective of the stipulated fact that appellant's pre-injury payment, which he is now willing to replicate, included the disputed utilities.
In the context of this case, the JCC erred by focusing solely on medical necessity, although that principle is more often than not controlling under the express terms of section 440.13. Our resolution of this case will turn on reconciling the medical necessity requirement, which this court thoroughly set out in Polk County Board of Commissioners v. Varnado, 576 So.2d 833 (Fla. 1st DCA 1991), with the equally important principle that, under the very same statute, the E/C must bear responsibility for the difference between the cost of claimant's pre-injury housing and the cost of "an apartment or house fully equipped according to the specifications set out in the JCC's order." Ramada Inn S. Airport v. Lamoureux, 565 So.2d 376, 377 (Fla. 1st DCA 1990).
In Varnado, this court focused upon medical necessity and held, "[a]bsent unique circumstances . . . the carrier is not required to bear the costs of normal living expenses not necessitated by the accident." 576 So.2d at 838. The Varnado court specifically considered the question of utilities, noting that "[u]tilities are generally considered basic necessities in every home in our society, and a claimant will have a difficult time demonstrating that necessity for such items is caused by the compensable accident such that they could be properly awarded as medical benefits." Id. See S. Indus. v. Chumney, 613 So.2d 74 (Fla. 1st DCA 1993).
Fully accepting the holdings of Varnado and similar cases, claimant contends that, because medical necessity is not the issue, he is nonetheless entitled to the payment in question. Claimant relies primarily upon Lamoureux to argue that his previous payment of $700 included water, sewer, and garbage and, accordingly, the provision of such utilities after the accident should be deemed included in his $700 payment. Claimant's position is correct and is further supported by All Clear Locating Services, Inc. v. Shurrum, 855 So.2d 1208 (Fla. 1st DCA 2003). In Shurrum, this court considered, among other things, the E/C's responsibility for an injured worker's post-accident home insurance and a wheelchair-accessible, barrier-free home. Significantly, this court relied upon Varnado and Chumney and observed that "the E/C is only responsible for the cost of the tenants' insurance that exceeds the cost that the claimant would have incurred *1092 in insuring his prior residence." Shurrum, 855 So.2d at 1211. Given Shurrum's reliance upon Varnado and Chumney, we easily conclude that the principles enunciated in these various cases are not irreconcilable.
Here, the question of medical necessity for the home itself is not at issue, as the E/C provided that benefit administratively. Claimant's pre-injury living expenses are also not in controversy, and claimant concedes he must contribute $700 toward his post-injury living expenses. Under Shurrum and Lamoureux, then, the E/C are responsible for the portion of the water and sewer bill necessitated by the new living quarters.
We note that Varnado relied in part for its holding upon this court's decision in Lamoureux. See Varnado, 576 So.2d at 838. The cases fit together, and the JCC's determination must turn on the theories relied upon and the proof presented by the parties at trial. Here, claimant has consistently maintained that his responsibility does not exceed payment of $700 plus electric utilities, exactly the expenses he bore before the accident. Claimant having made that showing, the E/C then had the burden to demonstrate that special circumstances exist so that claimant should be credited with both rent and utilities. Appellees presented no specific proof as to any matters bearing upon this question. Although not deciding the issue, we would note that in a case like this, the E/C may be able to show that, although claimant is continuing to pay the pre-injury amount, he is receiving a greater benefit not attributable to his injuriesfor instance, sublease payments or other financial contributions made by new occupants of the home provided by the E/C. We make this observation to emphasize that such proof is absent in the present case and to observe that claimant's showing of medical necessity, coupled with his willingness to pay pre-injury expenses, will serve to shift the burden of proof to the E/C to show that additional amounts should be paid by an injured claimant.
Finally, we note that our holding does no damage to a policy concern expressed in Varnado and similar cases. In cases involving provision of new housing, new transportation, or attendant care, the E/C are not required to supplement indemnity benefits paid under workers' compensation. As the Varnado court expressed, "[a]llowing for recovery of day-to-day expenses as medical benefit as well would provide for a duplicative award." 576 So.2d at 838 n. 2. Here, Desir does not enjoy a windfall. Conversely, though, were he to bear the water utility expense, shown by the evidence as $161 a month, his medical benefit under section 440.13 would actually be diminished by that amount. In other words, claimant would find himself actually having to expend out-of-pocket monies to obtain the benefits of a medically necessary device, the new residence. Such a result is not required by our case law and seems quite contrary to a common understanding of all workers' compensation lawsthat, to the extent possible, industry should bear workers' medical expenses attributable to workplace injuries. See, e.g., Fla. Game & Fresh Water Fish Comm'n v. Driggers, 65 So.2d 723, 725 (Fla.1953) (in an employee's action to recover compensation for the loss of his eye, observing that Florida's workers' compensation law was enacted partially "to make available promptly medical attention, hospitalization and compensation commensurate with the injury sustained in the course of employment; to place on the industry served and not on society the burden of providing for injured or killed workmen and their families.").
REVERSED.
VAN NORTWICK, J., concurs and BENTON, J., dissents with opinion.
*1093 BENTON, J., dissenting.
On the authority of Polk County Board of Commissioners v. Varnado, 576 So.2d 833, 838 (Fla. 1st DCA 1991); see also Southern Industries v. Chumney, 613 So.2d 74, 77 (Fla. 1st DCA 1993) ("The cost of garbage collection is an ordinary living expense, no portion of which may be deemed attributable to claimant's condition on the present record. Therefore, the JCC's award for the cost of garbage collection, past and continuing, is reversed."), I respectfully dissent from today's decision to reverse the order of the judge of compensation claims.
At the time of the industrial accident on December 23, 2002, Mr. Desir lived with his wife and four daughters in a two-bedroom, one-bath apartment which he rented for $700.00 a month. The rent included water (and presumably sewer, but not electricity). The record did not establish the nature or duration of the tenancy. After the accident and his release from the hospital, the employer and carrier housed Mr. and Mrs. Desir and their daughters in an apartment in Boca Raton, then in a four-bedroom house in Delray Beach, modified to accommodate his handicaps. This new house has two bathrooms. Mr. Desir's sister-in-law and her child moved in with the Desir family in November of 2005, and have shared the Delray Beach house since.
I cannot agree with any implication in the majority opinion that the employer's liability should hinge on whether the sister-in-law makes "sublease payments or other financial contributions." Ante p. 1092. To the extent the Desirs' new home shelters people who were not part of the household at the time of the accident, the majority opinion's reference to "a medically necessary device, the new residence," ante p. 1092, does not adequately describe the situation or assist the analysis.
In reversing the judge of compensation claims, the majority opinion invokes "section 440.13,"[1]ante p. 1091, entitled "Medical *1094 services and supplies; penalty for violations; limitations," while ruling that "the JCC erred by focusing solely on medical necessity." Ante p. 1091. But the "focus" on medical necessity comes straight from the statute. See §§ 440.13(1)(m) (defining "[m]edically necessary" as "used to . . . treat an illness or injury, . . . appropriate to the patient's diagnosis and status of recovery, and . . . consistent with the location of service, the level of care provided, and applicable practice parameters") and 440.13(2)(a), Fla. Stat. (2002) (requiring that the employer furnish the injured employee "medically necessary remedial treatment"). See also Thorkelson v. N.Y. Pizza & Pasta Inc., 956 So.2d 542, 543-44 (Fla. 1st DCA 2007) ("Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction." (quoting Sunshine Towing, Inc. v. Fonseca, 933 So.2d 594, 594 (Fla. 1st DCA 2006))).
Both decisions on which the majority opinion principally relies have medical necessity as a focus. See All Clear Locating Servs., Inc. v. Shurrum, 855 So.2d 1208, 1210 (Fla. 1st DCA 2003) ("The initial inquiry in determining the validity of any award of benefits in a workers' compensation case is whether there is a medical necessity for the awarded benefits.") and Ramada Inn S. Airport v. Lamoureux, 565 So.2d 376, 377 (Fla. 1st DCA 1990) (concluding, as to amenities awarded in a new home, "there is no evidence in the record which would support a finding that such facilities are medically necessary for treatment of the claimant's needs"). In neither of these cases, moreover, was the employer required to furnish living quarters for anybody who had not been a member of the claimant's household before the accident.
Relying on the testimony of the physiatrist who treated Mr. Desirand the only physician who testifiedthe judge of compensation claims denied the claim for $161.00 a month, stating:
It is a well settled principle, as supported by the caselaw provided by both sides, that the Judge of Compensation Claims can only award medically necessary benefits. "Medical necessity" is defined under F.S. 440.13(1)(m) as any medical service used to identify or treat an illness or injury. . . . As a predicate to awarding a medical benefit, medical necessity is required to be shown by a licensed physician. . . . I find that the utility (water and sewer) bills are not uniquely attributable to the workers' compensation injury according to the testimony of Dr. Lerner and I find that no apportionment of the bill is necessary in light of this finding.
The judge of compensation claims also ruled (and the claimant stipulated) that the "[c]laimant shall pay the sum of $700.00 per month for rent toward the modified housing provided by the Employer/Carrier beginning immediately."
Perceiving no error in these rulings, I dissent from the decision to overturn them.
NOTES
[1] Section 440.13, Florida Statutes (2002), begins with a series of definitions and provides in pertinent part:

(2) MEDICAL TREATMENT; DUTY OF EMPLOYER TO FURNISH.(a) Subject to the limitations specified elsewhere in this chapter, the employer shall furnish to the employee such medically necessary remedial treatment, care, and attendance for such period as the nature of the injury or the process of recovery may require, including medicines, medical supplies, durable medical equipment, orthoses, prostheses, and other medically necessary apparatus. Remedial treatment, care, and attendance, including work-hardening programs or pain-management programs accredited by the Commission on Accreditation of Rehabilitation Facilities or Joint Commission on the Accreditation of Health Organizations or pain-management programs affiliated with medical schools, shall be considered as covered treatment only when such care is given based on a referral by a physician as defined in this chapter. . . . Medically necessary treatment, care, and attendance does not include chiropractic services in excess of 18 treatments or rendered 8 weeks beyond the date of the initial chiropractic treatment, whichever comes first, unless the carrier authorizes additional treatment or the employee is catastrophically injured.
. . . .
(c) If the employer fails to provide treatment or care required by this section after request by the injured employee, the employee may obtain such treatment at the expense of the employer, if the treatment is compensable and medically necessary. There must be a specific request for the treatment, and the employer or carrier must be given a reasonable time period within which to provide the treatment or care. However, the employee is not entitled to recover any amount personally expended for the treatment or service unless he or she has requested the employer to furnish that treatment or service and the employer has failed, refused, or neglected to do so within a reasonable time or unless the nature of the injury requires such treatment, nursing, and services and the employer or his or her superintendent or foreman, having knowledge of the injury, has neglected to provide the treatment or service.
Mr. Desir was injured in December of 2002 when this version of the statute was in effect.