DAVIS, Judge.
Alice Gilbert, as guardian for the claimant Bruce Gilbert, appeals an order of the Judge of Compensation Claims denying claimant’s petition for benefits on the basis that the petition was barred by the statute of limitations set forth in section 440.19(1), Florida Statutes (1985). Because the claimant’s receipt of medical care from an authorized medical care provider at least once every two years tolled the statute of limitations until the claimant’s hospitalization at Largo Medical Center Hospital in July 1990, and because the JCC’s order fails to make a finding as to when the claimant became mentally incompetent, a finding that is necessary for a determination as to whether the claimant’s petition was barred by the statute of limitations, we reverse and remand for the JCC to determine whether the statute of limitations was tolled by his incompetency.
On March 24, 1987, the claimant, a bus driver for Pinellas Suncoast Transit Authority (PSTA), fell on a bus step while exiting a bus at work. The claimant hit his tailbone, back, neck and shoulders on the steps. PSTA authorized the claimant to receive medical attention in Largo Medical Center emergency department and Largo Medical Center Hospital. The emergency department physician diagnosed a contusion to the claimant’s thoracic spine. The claimant was instructed that he could return to work on March 29,1987.
On January 6, 1989, the claimant presented to the emergency department of Morton Plant Hospital with a complaint of a severe headache since that morning associated with nausea. The claimant gave a history of headaches every day over the past year since the accident where he fell down and hurt his neck. On the same day, the claimant was admitted to Largo Medical Center Hospital. In the admission history and physical report prepared by Dr. Wason, Dr. Wason wrote: “A year ago he was involved in an accident at work where he apparently fell and hit his head in the back. X-rays were done at that time, subsequently he has complained of intermittent headaches. Today he complained of severe occipital headaches similar to what he has had before.... ” Dr. Wason’s discharge diagnosis was loss of consciousness and confusion of unclear etiology, and significant hypertension.
On June 24, 1990, the claimant was transported by ambulance to Largo Medical Center Hospital emergency department after his wife found him unconscious. After several hours, the claimant regained consciousness, his headache was relieved, and he was sent home to follow-up with his own doctor. Ms. Gilbert testified that, after the June 24, 1990, *820 incident, her husband had difficulty with his left side, tingling in his hand and arm, headaches, and his back had gotten a lot worse.
On July 1, 1990, the claimant was transported to Largo Medical Center Hospital after his wife found him unconscious. Ms. Gilbert testified that her husband was very infantile, could not speak, and was unable to comprehend things. Ms. Gilbert testified that her husband’s condition has not changed, nor has he worked, since July 1, 1990.
Dr. Wassel, an orthopedic surgeon, saw the claimant on November 30, 1993, and January 26,1995. Dr. Wassel diagnosed numerous orthopedic problems in the claimant’s cervical, thoracic and lumbar spine, which he attributed to the claimant’s fall on March 24, 1987. Dr. Wassel testified that the problems in the claimant’s cervical, thoracic and lumbar spine caused ongoing pain. Dr. Wassel did not believe that the claimant was ever free of pain. Dr. Wassel testified that the injury to the claimant’s cervical spine in the fall of March 1987, was responsible for his headaches. Dr. Wassel testified that, within a reasonable degree of medical probability, the claimant was suffering from post-traumatic stress syndrome as a result of his orthopedic injuries.
Dr. Jones, a psychiatrist, evaluated the claimant on January 4, 1995. Dr. Jones’ impression was, among other things, that the claimant was suffering from post-traumatic stress disorder, post-traumatic delirium, a conversion disorder or reaction, chronic headaches secondary to a closed head injury, bulging of the cervical spine at the base of the brain, status post head injury with psychiatric complications, inability to interact with the environment, and inability to care for himself. Dr. Jones noted that an IQ evaluation of the claimant in 1966 showed that he had an IQ of 80, which was mildly or borderline retarded. Dr. Jones testified that the claimant’s fall on March 24, 1987, caused the claimant’s post-traumatic stress syndrome, post-traumatic delirium, and conversion disorder. Dr. Jones believed that the claimant had become mentally incompetent, as defined under Florida’s workers’ compensation law, in July 1990, when he was admitted to the hospital, and has continued to remain mentally incompetent.
Dr. Jones believed that the psychological component from the claimant’s fall in March 1987, was already in place at the time of the claimant’s hospitalization on January 6, 1989. Dr. Jones explained that the physical components had become more intensified and had gotten to the point where he was unable to handle the stress. Dr. Jones believed that the admissions to Largo Medical Center Hospital in June 1990, July 1990, and June 1993, were associated with the claimant’s medical and psychological problems from the fall on March 24,1987.
On March 2, 1994, Circuit Judge Thomas Penick, Jr., entered an order that determined that the claimant was incapacitated and appointed the claimant’s wife as his guardian. The order did not specify a date on which the claimant had become mentally incompetent.
On August 1, 1994, the claimant filed a petition for benefits. The employer/servicing agent (“E/SA”) defended the petition for benefits, among other things, on the basis that the petition was barred by the statute of limitations. A final hearing was held on February 20, 1995. On March 21, 1995, the JCC entered an order, which determined that the claimant’s petition for benefits was barred by the statute of limitations.
Although the JCC concluded that the claimant clearly suffered from a condition that would render him PTD under the Workers’ Compensation Law and recited the evidence in support of a finding that the claimant’s injuries were causally related to his March 24, 1987, accident, the JCC nevertheless concluded that the claimant’s petition was barred by the statute of limitations. The JCC determined that the last medical care furnished by the E/C with respect to the March 24, 1987, accident was on March 24, 1987. The JCC noted that, although the claimant argued that he was incompetent as of July 1, 1990, so as to toll the statute of limitations, the order determining incompetency and appointing a plenary guardian was dated March 2, 1994. The JCC concluded that, even if one were to assume that the *821 claimant was incompetent as of July 1, 1990, the statute of limitations had still run because the claimant had still gone a period in excess of two years after receiving authorized medical care and attention paid for by the E/SA before filing his petition.
The claimant argues on appeal that the JCC erred in determining that his claim was barred by the statute of limitations because he received authorized medical treatment from Largo Medical Center Hospital and the Diagnostic Clinic for injuries resulting from his industrial accident at least once every two years. The E/SA argue that the JCC correctly determined that the claimant’s petition was barred by the statute of limitations because the E/SA had no knowledge that the claimant had a work-related condition following his industrial accident, and the claimant’s return visits to Largo Medical Center Hospital for complaints and symptoms, which appeared to the E/SA to be unrelated to the injuries suffered from his fall, were not sufficient to toll the statute of limitations. The E/SA further argue that, in addition to there being no indication that the claimant’s complaints and symptoms were related to his industrial accident, the claimant chose to file a claim for short-term disability benefits, rather than a workers’ compensation claim.
We hold that the claimant’s receipt of medical care from an authorized medical care provider at least once every two years for injuries causally related to his industrial acci-. dent tolled the statute of limitations until the claimant’s hospitalization at Largo Medical Center Hospital in July 1990. The present case is controlled by this court’s decision in McNeilly v. Farm Stores, Inc., 553 So.2d 1279 (Fla. 1st DCA 1989). In McNeilly, the claimant suffered a hernia in November 1985, while working as a convenience store clerk. In January 1986, Dr. Cather, the claimant’s authorized physician, admitted him to the hospital for surgical repair of the hernia. Because Dr. Gonzalez, the claimant’s cardiologist, advised against the surgery, Dr. Cather discharged the claimant from the hospital with the intention that the claimant would be followed by Dr. Gonzalez. The employer/carrier never deauthorized Dr. Cather. The employer/carrier paid the claimant workers’ compensation benefits from January 28, 1986, through March 10, 1986. The claimant’s hernia later worsened, and began to interfere with his normal functioning. In September 1987, the claimant returned to Dr. Cather for an evaluation regarding the possible surgical repair of his hernia. The evidence was conflicting as to whether the employer/carrier received notification of the claimant’s return visit, which the claimant paid for himself. Dr. Cather, in consultation with Dr. Gonzalez, again declined to perform surgery and prescribed a truss to make the claimant more comfortable. In February 1988, the claimant sought medical advice in Virginia regarding possible surgical repair of his hernia. The doctors in Virginia decided to perform the surgery. On February 22, 1988, the claimant sought telephone authorization for the surgery from the employer/carrier. On February 25, 1988, a representative of the employer/carrier informed the claimant that his surgery would not be covered because the statute of limitations had run on his claim. The claimant proceeded to have the surgery, which was successfully performed on February 29, 1988. The claimant filed a claim for benefits and medical and travel expenses in April 1988. After a hearing, the JCC denied the claimant’s claim as barred by the statute of limitations based upon a finding that the claimant’s September 1987 visit to Dr. Cather was not furnished by the employer/carrier, and because the claimant had not sought authorization for his return to Dr. Cather and had paid for the visit himself.
This court held that the claimant’s claim was not barred by the statute of limitations because the claimant received remedial care from Dr. Cather, an authorized physician, in September 1987, which was within two years of the employer/carrier’s last payment of benefits. McNeilly, 553 So.2d at 1280. The court found that the claimant’s payment of Dr. Cather’s bill himself was irrelevant because the significant event is the rendition of remedial treatment by an authorized physician before the expiration of the two-year period, rather than the payment of the bill for that treatment. Id.
*822 In the present case, the E/SA conceded at oral argument that the claimant was authorized to return to Largo Medical Center Hospital for follow-up care for his March 24, 1987, injuries. Thus, under this court’s holding in McNeilly, the claimant’s continuing evaluation and treatment at Largo Medical Center Hospital on January 6, 1989, June 24, 1990, and July 1, 1990, for injuries that the E/SA concede were ultimately determined to be causally related to the March 24, 1987, accident, tolled the running of the statute of limitations until the July 1,1990, Largo Medical Center Hospital admission despite the claimant’s failure to request the E/SA to pay for the hospital’s services under workers’ compensation.[1]
The claimant argues that, because the uncontroverted testimony of Dr. Jones establishes that the claimant became mentally incompetent in July 1990, the statute of limitations was tolled until the claimant’s wife was appointed as his guardian on March 2, 1994. Section 440.19(8), Florida Statutes (1985), provides in part:
If a person who is entitled to compensation under this chapter is mentally incompetent or a minor, the provisions of subsection (1) shall not be applicable so long as such person has no guardian or other authorized representative, but shall be applicable in the case of a person who is mentally incompetent or a minor from the date of appointment of such guardian or other representative ....
The test for determining whether a claimant is mentally incompetent is whether he is so unsound of mind that he could not manage his ordinary affairs as he had become accustomed to do. Thomas v. Westinghouse Elec. & Mfg. Co., 160 Fla. 687, 36 So.2d 377, 381 (1948); Diamond R. Fertilizer v. Davis, 567 So.2d 451, 454 (Fla. 1st DCA 1990).
In the present case, the JCC apparently did not find it necessary to make findings as to when the claimant became mentally incompetent. The JCC’s order states:
38. The Claimant has asserted that he was incompetent as of July 1,1990, so as to toll the Statute of Limitations, but the Order determining incapacity and appointing a plenary guardian is dated March 2, 1994. Even if one is to assume that the Claimant became incompetent as of July 10, 1990, it is still clear that he went for a period in excess of two years prior to receiving authorized medical care and attention paid for by the Employer/Carrier. As such, the claim is barred by the Statute of Limitations.
Because the claimant’s receipt of medical care from an authorized medical care provider at least once every two years tolled the statute of limitations until his hospitalization at Largo Medical Center Hospital in July 1990, and because a determination of whether the statute of limitations barred the claimant’s petition is dependent on the date that the claimant became mentally incompetent, we reverse and remand for the JCC to make the necessary findings.
Accordingly, the order of the JCC is reversed and the cause is remanded for further proceedings.
ALLEN, J., concurs.
ZEHMER, C.J., specially concurs with written opinion.

. The claimant maintains that the Diagnostic Clinic was an authorized medical care provider because the E/SA paid a Diagnostic Clinic bill. The record shows that the Diagnostic Clinic performed radiology services relating to the claimant’s thoracic and lumbosacral spine on March 24, 1987, and that the bill for this service was paid by E/SA. Dr. Lee’s March 24, 1987, imaging services report relating to these services appears in the records of Largo Medical Center Hospital. Although the claimant received treatment at the Diagnostic Clinic following his March 24, 1987, accident through 1993, the notice of injury form indicates that Largo Medical Center Hospital and its emergency department were the only authorized medical care providers.