878 So.2d 432 (2004)
Patricia A. McCARTY, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and St. Augustine Trains, Inc., Appellees.
No. 1D03-3116.
District Court of Appeal of Florida, First District.
July 9, 2004.
*433 Carol S. Miller, Esquire, Jacksonville Area Legal Aid, Inc., Jacksonville, for Appellant.
Geri Atkinson-Hazelton, General Counsel; John D. Maher, Deputy General Counsel, Tallahassee, for Appellee Florida Unemployment Appeals Commission.
BENTON, J.
Patricia McCarty appeals the order of the Unemployment Appeals Commission upholding the appeals referee's determination that she was ineligible to receive unemployment compensation benefits even though she was discharged from her position with St. Augustine Trains, Inc., as tour guide, salesperson, and driver of an articulated tram. We reverse.
A seven-year employee,[1] Ms. McCarty lost her job after she drove into a driveway that she had been told not to use, and  when upbraided  defended her choice as necessary to avoid an accident with another tram driver. James Wettach, the president of St. Augustine Trains, explained the reason[2] for the termination and the circumstances that gave rise to his decision:

*434 I did not fire [her] for the driveway. As I told her I fired her for the noncooperation when I went down to talk about the driveway. If I was going to fire her I wouldn't have gone down to speak with her. I got no cooperation.... Other than that I think both of us pretty much agree on the facts and how it happened....
The "noncooperation" to which Mr. Wettach alluded consisted of Ms. McCarty's telling him "four times to speak to another driver with whom [Ms. McCarty] alleged she had `almost' had a head-on collision." Ms. McCarty "would not really admit that she should not have pulled in there. She firmly believed that she should have."
A majority of the Unemployment Appeals Commission concluded that Ms. McCarty was guilty of "misconduct" disqualifying her for unemployment compensation benefits under section 443.036(29), Florida Statutes (2002), but we share the views Chairman Alan Orantes Forst cogently expressed in dissent.[3]
"Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his or her employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his or her employer.
Section 443.036(29), Florida Statutes (2002). "In defining misconduct, courts are required to liberally construe the [unemployment compensation] statute in favor of the employee." Mason v. Load King Mfg. Co., 758 So.2d 649, 655 (Fla.2000).
Even if Ms. McCarty's deportment justified her discharge, "`[w]hether an employer has the right to terminate an employee's employment and whether a terminated employee meets the disqualification criteria set out in the unemployment compensation statute are separate issues. See Cooks v. Unemployment Appeals Comm'n, 670 So.2d 178, 180 (Fla. 4th DCA *435 1996); Livingston v. Tucker Constr. & Eng., Inc., 656 So.2d 499, 500 (Fla. 2d DCA 1995); Hummer v. Unemployment Appeals Comm'n, 573 So.2d 135, 137 (Fla. 5th DCA 1991).' Lusby v. Unemplmt. App. Comm'n, 697 So.2d 567, 568 (Fla. 1st DCA 1997). A single, isolated act of negligence does not constitute disqualifying misconduct. See, e.g., Cooks, 670 So.2d at 180; Johnson v. Unemplmt. App. Comm'n, 513 So.2d 1098, 1099 (Fla. 3d DCA 1987). `While a violation of an employer's policy[ ] may constitute misconduct, `[r]epeated violations of explicit policies, after several warnings, are usually required.' Barchoff v. Shells of St. Pete Beach, Inc., 787 So.2d 935, 936 (Fla. 2d DCA 2001).' Cooksey-James v. Unemplmt. App. Comm'n, 869 So.2d 1209 (Fla. 2d DCA 2004)." Ash v. Unemplmt. App. Comm'n, 872 So.2d 400, 402 (Fla. 1st DCA 2004).
Ms. McCarty's discharge resulted from a single, isolated incident,[4] and did not amount to disqualifying misconduct. See Donnell v. Univ. Cmty. Hosp., 705 So.2d 1031, 1032 (Fla. 2d DCA 1998) (holding claimant's actions did not disqualify her from receiving unemployment compensation benefits, where she had been a good employee for three years, but failed to follow a new policy regarding garbage can liners, which led to a loud argument with her supervisor when he confronted her, and ended in claimant's discharge); see also Cullen v. Neighborly Senior Servs., Inc., 775 So.2d 392, 393-94 (Fla. 2d DCA 2000) (holding that an argument in a private office during which the claimant raised his voice and accused the supervisor of not being truthful was an isolated incident that did not preclude unemployment compensation benefits).
While an isolated incident can be disqualifying, if sufficiently egregious, the single-incident cases cited by the Commission involve unexcused, unequivocal, and deliberate disobedience. The present case is devoid of any evidence that Ms. McCarty deliberately or intentionally acted against her employer's interests, even though a policy was violated. See Finish Line Feed, Inc. v. Acosta, 748 So.2d 1089, 1090 (Fla. 4th DCA 2000) ("[P]roof of the claimant's violation of the employer's known policy did not rise to the level of disqualifying misconduct connected with work. The employer cites ... cases in which a single act of misconduct was found as disqualifying. A common thread running through all of the cited cases is a finding, supported by competent substantial evidence, that the claimant acted in deliberate and intentional disobedience (in some instances, in flagrant disregard) of a supervisor's order."). While it was disputed whether safety really required Ms. McCarty to use the forbidden driveway, the evidence that Ms. McCarty "firmly believed that she should have" done it  in her employer's as well as her own interest  was clear and uncontroverted, and expressing these views to Mr. Wettach after the fact was not disqualifying misconduct.
Reversed and remanded.
LEWIS, J., concurs; ERVIN, J., dissents.
ERVIN, J., dissenting.
Although not clearly stated by the appeals referee, the finding that Patricia McCarty's "deviations from her route, without asking permission, evince an intentional and willful or wanton disregard of the employer's interests," is, in my judgment, a tacit finding of insubordination, on *436 evidence showing that claimant on two separate occasions willfully and intentionally refused to follow her employer's express directions to operate her tram on a driveway in front of the employment headquarters other than on the center driveway. As such, I consider the finding supported by competent, substantial evidence.
After first being told by the dispatcher of the company's policy to avoid using the driveway in question because of the management's concern for the safety of its customers, Ms. McCarty was seen three days later again entering the center drive, and, when confronted by her employer asking why she had disregarded established policy, she became defensive and argumentative, resulting in her then being relieved from her duties. When she returned to work the following day, she met with her employer, James Wettach, and her attitude had not improved. Wettach described the meeting in the following terms: "[W]e met the next day[;] the conversation ... did not go much better and she would not really admit that she should not have pulled in there. She firmly believed that she should have. It's my final call she shouldn't have [,] so I dismissed her at that time at our meeting."
Obviously, the claimant's willful refusal to comply with the employer's policy cannot be viewed as "[a] single, isolated act of negligence." Ante at 435. Moreover, a single act of insubordination can establish misconduct. See Pascarelli v. Unemployment Apps. Comm'n, 664 So.2d 1089 (Fla. 5th DCA 1995). Indeed, an employee's noncompliance with an employer's known policy on only one occasion has been held to constitute misconduct. In Ford v. Southeast Atlantic Corp., 588 So.2d 1039 (Fla. 1st DCA 1991), this court affirmed a finding of misconduct on evidence showing that an employee was terminated because of his single act of failing a drug test in violation of his employer's policy that no employee be present at work with drugs in his or her system. In answering his argument that he could not be disqualified from benefits because of only one infraction, we stated:
[W]e reject appellant's argument that repeated instances of misconduct were necessary before he could be found guilty of misconduct, because repeated acts in violation of company policy are not necessary to constitute misconduct within the meaning of Chapter 443, Florida Statutes. See, e.g., Clay County Sheriff's Office v. Loos, 570 So.2d 394 (Fla. 1st DCA 1990) (employee who attended radar training course in direct disobedience of superior's denial of his request was guilty of misconduct); National Ins. Servs., Inc. v. Unemployment Appeals Comm'n, 495 So.2d 244 (Fla. 2d DCA 1986) (employees who refused to perform requirement that they clean the coffee area acted unreasonably and were guilty of misconduct); Sears, Roebuck & Co. v. Unemployment Appeals Comm'n, 463 So.2d 465 (Fla. 2d DCA 1985) (employee who admitted kissing minor female employee on the cheek during working hours in violation of company policy was guilty of misconduct); Rosa v. Jefferson's Stores, Inc., 421 So.2d 818 (Fla. 4th DCA 1982) (employee who allowed her son to use her employee discount card against company policy was guilty of misconduct). Moreover, although there is case law which stands for the proposition that a single negligent act cannot support a finding of misconduct, and that a single act of bad judgment by the employee does not constitute bad faith, this is not a case of negligence or bad judgment, but rather a direct violation of company policy.
Id. at 1041 (footnotes omitted).
Nor can I agree with the majority's characterization that the "present case is *437 devoid of any evidence that Ms. McCarty deliberately or intentionally acted against her employer's interests, even though a policy was violated." Ante at 435. Insubordination and a refusal to comply with a legitimate work order constitutes misconduct, disqualifying a claimant from benefits. See Fort Myers Pump & Supply, Inc. v. Fla. Dep't of Labor & Employment Sec., 373 So.2d 429 (Fla. 2d DCA 1979). It is well settled that the appeals referee is the finder of fact in an unemployment claims procedure, and that the referee's findings must be upheld if supported by competent, substantial evidence. See Ford, 588 So.2d at 1040. Under the circumstances, I consider that we have no reasonable alternative other than to affirm.
NOTES
[1] At the time of her discharge on July 3, 2002, Ms. McCarty had worked for St. Augustine Trains without interruption for more than three years, and off and on since February of 1989.
[2] Mr. Wettach clearly testified that merely entering the driveway  in contradistinction to refusing to concede that the driveway should not have been entered  was not the rationale for the termination, but the appeals referee overlooked this testimony in finding that:

The claimant's deviations from her route, without asking permission, evince an intentional and willful or wanton disregard of the employer's interests. Accordingly, the claimant was discharged for misconduct connected with the work as defined in the unemployment compensation law and she should remain disqualified from receipt of benefits.
Mr. Wettach's testimony that "[i]t's my final call she shouldn't have [pulled into the driveway] and we weren't getting anywhere so I dismissed her at that time at our meeting" does not support the referee's finding that "deviations from her route, without asking permission" occasioned the firing.
[3] Chairman Forst concluded that "the employer has failed to demonstrate that the claimant's actions constitute disqualifying misconduct connected with work." Chairman Forst summarized the operative facts, as follows:

The claimant testified, without rebuttal, that she was using the center driveway during the incidents at issue in order to avoid an accident. As such, her actions were taken with the intent of furthering the employer's interests. Moreover, the employer's president testified that he did not terminate the claimant because of these [ ] incidents, but because of her being uncooperative when he questioned her about the [ ] incident. However, the record indicates that the claimant did inform the employer's president that she used the center driveway to avoid a head-on collision and repeatedly implored the president to speak with the other bus driver. As such, the record does not support a conclusion that the claimant was insubordinate. Additionally, the claimant had worked for the employer, on and off, for approximately seven years and there is no indication in the referee's decision that the claimant had been previously disciplined.
[4] Mr. Wettach specifically testified at the hearing that there was nothing else in Ms. McCarty's employee file that contributed to her discharge.