956 So.2d 542 (2007)
Debi THORKELSON, Appellant,
v.
NY PIZZA & PASTA INC., and Aequicap Insurance Claims Services, Appellees.
No. 1D06-2083.
District Court of Appeal of Florida, First District.
May 21, 2007.
*543 Mark D. Dickstein, Esquire, Hollywood, and Bill McCabe, Esquire, Longwood, for Appellant.
Cindy R. Galen, Esquire and Daniel R. Goodman, Esquire of Eraclides, Johns, Hall, Gelman, Eikner & Johannessen, L.L.P., Sarasota, for Appellees.
BENTON, J.
Debi Thorkelson appeals the final order denying temporary partial disability benefits she sought on account of disability attributable to an industrial accident that took place on August 26, 2004. She argues the judge of compensation claims erred in disqualifying her, pursuant to section 440.15(4)(e), Florida Statutes (2004), based on the fact that, after the injury, her employer discharged her for misconduct. We affirm.
In the order on appeal, the judge initially framed the question as "whether [Ms. Thorkelson] was terminated due to misconduct and/or for cause." Clearly a claimant is not disqualified from workers' compensation benefits just because she "was terminated . . . for cause." But the judge of compensation claims ultimately determined that Ms. Thorkelson was terminated for misconduct, and not for any other reason. See § 440.15(4)(e), Fla. Stat. (2004) ("If the employee is terminated from postinjury employment based on the employee's misconduct, temporary partial disability benefits are not payable as provided for in this section.") (emphasis supplied). See also, e.g., Blodgett v. Fla. Unemplmt. App. Comm'n, 880 So.2d 814, 815 (Fla. 1st DCA 2004) ("An employee's actions sufficient to justify discharge from employment do not necessarily constitute misconduct sufficient to bar recovery of unemployment benefits.").
Despite finding "no question but that the claimant suffered a compensable lower thoracic and lower back injury" when she tripped and fell at her job, and despite accepting medical testimony that she was temporarily, partially medically incapacitated as a result, the judge of compensation claims determined that Ms. Thorkelson was disqualified from receiving temporary partial disability benefits, because "pursuant to Section 440.15(4)(e) . . . [he] specifically f[ou]nd that the claimant was terminated from the post-injury employment based upon her misconduct."
"Misconduct" is a statutory term. "Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction." Sunshine Towing, Inc. v. Fonseca, *544 933 So.2d 594, 594 (Fla. 1st DCA 2006). The Legislature added language, effective October 1, 2003, so that section 440.15(4)(e) of the Workers' Compensation Law provided on the date of her accident (as it still provides):
(4) Temporary Partial Disability.
. . . .
(e). . . . If the employee is terminated from postinjury employment based on the employee's misconduct, temporary partial disability benefits are not payable as provided for in this section. . . .
§ 440.15(4)(e), Fla. Stat. (2004) (typeface altered). See Ch.2003-412, § 18, at 3925, 3969, Laws of Fla. (adding the language quoted above to section 440.15(4)(e)). Section 440.02(18), Florida Statutes (2004), defines "misconduct":
"Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of the employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of an employer's interests or of the employee's duties and obligations to the employer.
§ 440.02(18), Fla. Stat. (2004). These provisions parallel similar provisions in the Unemployment Compensation Law, including section 443.101(1)(a), Florida Statutes (2004), which provides:
An individual shall be disqualified for benefits:
(1)(a) For the week in which . . . the individual has been discharged by his or her employing unit for misconduct connected with his or her work. . . .
. . . .
2. Disqualification for being discharged for misconduct connected with his or her work continues for the full period of unemployment next ensuing after having been discharged. . . .
Another provision of the Unemployment Compensation Law defines "misconduct" virtually identically to the way the Legislature has defined "misconduct" for workers' compensation purposes:
"Misconduct" includes, but is not limited to, the following, which may not be construed in pari materia with each other:
(a) Conduct demonstrating willful or wanton disregard of an employer's interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee; or
(b) Carelessness or negligence to a degree or recurrence that manifests culpability, wrongful intent, or evil design or shows an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his or her employer.
§ 443.036(29)(a-b), Fla. Stat. (2004). Our supreme court has "held that where the Legislature uses the exact same words or phrases in two different statutes, we may assume it intended the same meaning to apply. See Goldstein v. Acme Concrete Corp., 103 So.2d 202 (Fla.1958)." State v. Hearns, No. SC05-2122, 2007 WL 1215452, at *5, ___ So.2d ___ (Fla. Apr. 26, 2007).
Many of the "exact same words or phrases" appear in both of these statutes. None of the "tweaks" that cause slight differences suggest any difference in sense. The policy implications of the Legislature's decision to use virtually the same definition of "misconduct" for workers' *545 compensation purposes as it chose to use for unemployment compensation purposes, are for the Legislature, not the courts. See Beshore v. Dep't of Fin. Servs., 928 So.2d 411, 413 (Fla. 1st DCA 2006) ("`[T]his court is without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power.' Am. Bankers Life Assurance Co. of Fla. v. Williams, 212 So.2d 777, 778 (Fla. 1st DCA 1968)."). Moreover, the Legislature's use of a virtually identical definition of "misconduct" in the recent amendment to the workers' compensation statutes as is used in the unemployment compensation statutes suggests that "the legislature must be presumed to have continued its approval" of the meaning of "misconduct" that has developed in the case law, "else it would have stated the contrary" or chosen to define "misconduct" in a different way. Sam's Club v. Bair, 678 So.2d 902, 904 (Fla. 1st DCA 1996).
The unlikely contention that "[a]dopting the standard of the unemployment compensation law for purposes of workers' compensation claims would allow review of a workers' compensation award by the unemployment compensation Referee or Commission, which was never intended," is well wide of the mark and wholly unpersuasive. Section 443.0315, Florida Statutes (2004), precludes any such outcome:
Any finding of fact or law, judgment, conclusion, or final order made by a hearing officer, the commission, or any person with the authority to make findings of fact or law in any proceeding under this chapter is not conclusive or binding in any separate or subsequent action or proceeding . . . between an individual and his or her present or prior employer . . ., regardless of whether the prior action was between the same or related parties or involved the same facts.
§ 443.0315, Fla. Stat. (2004). A judge of compensation claims is not bound by factual findings made, or legal conclusions drawn, in unemployment compensation proceedings (if any) involving the same claimant. This does not mean, however, that a judge of compensation claims is free to ignore the judicial construction of the definition of "misconduct" in the case law of which the Legislature was presumptively aware when it amended the Workers' Compensation Law.
As to both statutes, whether "an employer has the right to terminate an employee's employment and whether a terminated employee meets the disqualification criteria . . . are separate issues." McCarty v. Fla. Unemplmt. App. Comm'n, 878 So.2d 432, 434 (Fla. 1st DCA 2004) (internal quotation marks and citation omitted); Lyster v. Fla. Unemplmt. App. Comm'n, 826 So.2d 482, 484-85 (Fla. 1st DCA 2002). "Whether a claimant commits misconduct connected with work is a question of law [, but the] findings of fact [on which the legal question is based] must be accepted if supported by competent, substantial evidence." Sauerland v. Fla. Unemplmt. App. Comm'n, 923 So.2d 1240, 1241 (Fla. 1st DCA 2006). "While a violation of an employer's policy may constitute misconduct, `[r]epeated violations of explicit policies, after several warnings, are usually required.'" Ash v. Fla. Unemplmt. App. Comm'n, 872 So.2d 400, 402 (Fla. 1st DCA 2004) (quoting Barchoff v. Shells of St. Pete Beach, Inc., 787 So.2d 935, 936 (Fla. 2d DCA 2001)) (footnote omitted). "A single, isolated act of negligence does not constitute disqualifying misconduct." Id.; Lusby v. Unemplmt. App. Comm'n, 697 So.2d 567, 567-68 (Fla. 1st DCA 1997).
*546 But the evidence of record in the present case supports the finding that the conduct that led to Ms. Thorkelson's firing included multiple instances of willful insubordination. Compare Ash, 872 So.2d at 402 ("`[T]he conduct complained of was, at most, an isolated incident of poor judgment that did not rise to a level of `misconduct,' as the claimant was not acting willfully, wantonly, or in substantial disregard of the employer's interest. See §§ 443.036(29), 443.101, Fla. Stat.'") (quoting Cohen v. Fla. Unemplmt. App. Comm'n, 868 So.2d 664, 664 (Fla. 3d DCA 2004)); compare also McCarty, 878 So.2d at 435 ("While an isolated incident can be disqualifying, if sufficiently egregious, the single-incident cases . . . involve unexcused, unequivocal, and deliberate disobedience. The present case is devoid of any evidence that Ms. McCarty deliberately or intentionally acted against her employer's interests, even though a policy was violated. See Finish Line Feed, Inc. v. Acosta, 748 So.2d 1089, 1090 (Fla. 4th DCA 2000) ("[P]roof of the claimant's violation of the employer's known policy did not rise to the level of disqualifying misconduct connected with work. The employer cites . . . cases in which a single act of misconduct was found as disqualifying. A common thread running through all of the cited cases is a finding, supported by competent substantial evidence, that the claimant acted in deliberate and intentional disobedience (in some instances, in flagrant disregard) of a supervisor's order.")."). Here the evidence also showed that she willfully and repeatedly acted in her own perceived interest in disregard of her employer's express directives.
In sum, the judge of compensation claims did not err in determining that Ms. Thorkelson was terminated for misconduct, within the meaning of section 440.15(4)(e) as construed in light of relevant case law, including the unemployment compensation cases, or in denying on that account temporary partial disability benefits, penalties, interest, costs and fees.
Affirmed.
BARFIELD and POLSTON, JJ., concur.