997 So.2d 476 (2008)
Kathleen AUMAN, Appellant,
v.
LEVEROCK'S SEAFOOD HOUSE, Leverock's Restaurant/Spectrum HR LLC, Providence Property & Casualty Insurance Company, Appellees.
No. 1D07-6297.
District Court of Appeal of Florida, First District.
December 16, 2008.
*477 Brian O. Sutter, Port Charlotte; Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellant.
William H. Rogner of Hurley, Rogner, Miller, Cox, Waranch & Westcott, P.A., Winter Park, for Appellees.
BENTON, J.
In this case of first impression, we reverse a compensation order insofar as it cut off Kathleen Auman's temporary total disability benefits after only eleven weeks, even though her temporary disability persisted at the time of the hearing on the claim for benefits. There is no statutory authority for such a cutoff. See Thorkelson v. N.Y. Pizza & Pasta Inc., 956 So.2d 542, 543-44 (Fla. 1st DCA 2007) ("Workers' compensation is purely a creature of statute and, as such, is subject to the basic principles of statutory construction." (quoting Sunshine Towing, Inc. v. Fonseca, 933 So.2d 594, 594 (Fla. 1st DCA 2006))).
While working as a waitress, it was Ms. Auman's misfortune to suffer two separate and unrelated industrial accidents. The first was on October 17, 2004, when she slipped and fell to her knees. The second took place ten days later when she again slipped and fell, this time backwards, landing on her elbow, and fracturing the head of her right humerus. The doctor who saw her in the wake of the fall backwards on October 27, 2004, took her off work because of the injury to her right arm, and recommended surgery to repair the fracture. The judge of compensation claims found "that the accident of October 27, 2004 resulted in injuries to the claimant's right arm and elbow and that [at least as of the hearing on November 7, 2007] she ha[d] remained temporarily disabled as a result of those injuries since that date."
She had already been accepted as temporarily disabled on account of the injury to her arm and elbow sustained in her second accident[1] when magnetic resonance imaging revealed "bilateral patellar [chondrosis], secondary to trauma" suffered in the initial accident on October 17, 2004. On January 12, 2005, the physician treating her knees recommended separate surgery to ameliorate that condition, and advised her to remain off work until knee surgery had been performed. At the time, this advice had no result whatsoever on any party's behavior or any other practical effect. Ms. Auman had already been taken off work and no surgery of any kind was authorized before the compensation order under review was entered.
The restaurant and its insurance carrier take the position here as below that, instead of up to 104 weeks of temporary disability payments during recovery from the knee injuries,[2] she should receive a *478 mere eleven weeks[3] of benefits. Nothing in the language of the statute supports their position. Section 440.15(2)(a), Florida Statutes (2004), authorizes disability benefits for up to 104 weeks for any temporary disability of which an industrial accident is the major contributing cause. See Okeechobee Health Care v. Collins, 726 So.2d 775, 777 (Fla. 1st DCA 1998). The Workers' Compensation Act defines disability as "incapacity because of the injury to earn in the same or any other employment the wages which the employee was receiving at the time of the injury," § 440.02(13), Fla. Stat. (2004), and provides, in pertinent part:
... in case of disability total in character but temporary in quality, 66 2/3 percent of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed 104 weeks.... Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker's permanent impairment shall be determined.
§ 440.15(2)(a), Fla. Stat. (2004). The compensation order under review unjustifiably limited the 104 weeks of temporary disability benefits available to a loyal employee who returned to work after one industrial accident, only to suffer another, wholly unrelated industrial accident that was the major contributing cause of another, wholly unrelated disability. (We are not concerned in the present case with multiple injuries from a single industrial accident or subsequent aggravation of an initial injury.) The statute contains no language truncating the 104-week period for the benefit of employers whose failure to deal with slippery floors leads to multiple industrial accidents. Ms. Auman suffered altogether separate and distinct industrial accidents, and sustained separate and distinct injuries, which led to separate and distinct disabilities, as defined by statute.
The compensation order severed "disability" from its statutory moorings. Under the statute, "disability" is defined as "incapacity because of the injury," § 440.02(13), Fla. Stat. (2004), not as "incapacity" in some amorphous, disembodied sense disassociated from a particular industrial accident and the injury that accident caused. Because of the injury she suffered in her first industrial accident on October 17, 2004, Ms. Auman suffered a disability in her lower extremities. Because of the injury she suffered in her second industrial accident on October 27, 2004, her right arm was disabled.
As to each of these distinct, temporary disabilities, so long as the relevant industrial accident was and remained the major contributing cause, she was entitled to temporary disability compensation benefits for, as to each, up to a total of 104 weeks. We have already rejected the "calendar" interpretation of the 104-week statutory cap in favor of the "bank" interpretation. See Cooper v. Buddy Freddy's Rest., 889 So.2d 125, 126 (Fla. 1st DCA 2004) ("Claimant's 104 weeks of eligibility is measured in terms of cumulative payments received rather than consecutive weeks from the date of her accident."). A temporarily disabled claimant who has been able to return to work but who then suffers a relapse may be entitled to temporary disability benefits more than two years after the industrial accident, so long as temporary *479 benefits have not actually been paid for 104 weeks. Otherwise stated, "the 104-week limitation period is calculated cumulatively." Wright v. City of Rockledge, 813 So.2d 283, 284 (Fla. 1st DCA 2002).
Under our cases, Ms. Auman had a "bank" of 104 weeks of temporary disability benefits against which to draw during her convalescence from the knee injuries. But she had no need for any of the temporary disability benefits to which she was entitled on account of her knees-based disability while she was still receiving the benefits to which she was entitledand on account of which she was in fact paidfor the disability attributable to the arm and elbow injury she sustained in the subsequent, entirely separate industrial accident. She received all the temporary total disability benefits to which she was entitled on account of her disabled arm, but she did not receive all the benefits to which she was entitled on account of the disability requiring knee surgery to correct.
Accordingly, the compensation order is reversed insofar as it terminated temporary total disability benefits effective January 12, 2007, and the case is remanded with directions to decide the extent of additional, temporary disability benefits not exceeding a "cumulative" total of 104 weeksthat the disability attributable to her compensable knee injuries entitled her to. If the injury to the knees remained the major contributing cause of disability lasting that longassuming she did not attain maximum medical improvement earliershe might be eligible for as many as 93 more weeks of temporary disability benefits.
Reversed and remanded.
BROWNING, C.J., concurs; WEBSTER, J., concurs in result only, with opinion.
WEBSTER, J., concurring in the result only.
I am somewhat troubled by the result reached by the majority, given the facts of this case. The judge concluded that claimant was entitled to only eleven weeks of temporary total disability benefits for the first injury (that to her knees) because she had received temporary total disability benefits for the second injury (that to her right arm and elbow) for the maximum 104 weeks permitted by section 440.15(2)(a), and during 93 of those 104 weeks she was temporarily totally disabled because of both injuries. It strikes me that such a conclusion is consistent with common sense. However, given the use in section 440.15(2)(a) of the word "disability" and the fact that section 440.02(13) defines a "disability" as "incapacity because of the injury" (emphasis added), I find myself constrained to conclude that the construction reached by the majority is as reasonable as any other. While I think it unlikely that the legislature contemplated such a result, as a judge it is not my job to attempt to divine what was in the minds of those voting on this legislation at the time it was adopted. Rather, I must rely on the words chosen, and conclude that the legislation was intended to be applied as written, unless such a construction would result in a truly absurd result. See Maddox v. State, 923 So.2d 442, 452-53 (Fla. 2006) (Cantero, J., dissenting) (discussing the absurdity doctrine). There is nothing absurd about the majority's construction. Accordingly, I concur in the result reached. Of course, if the legislature did not contemplate such a result, it can always amend the statute to make its purpose clear.
NOTES
[1] Ms. Auman has by now received temporary total disability benefits for 104 weeks as a result of the industrial accident on October 27, 2004. With regard to these payments, the compensation order under review finds:

The parties stipulated during the hearing that temporary indemnity was initially paid from the date of October 28, 2004 until April 2006. By virtue of the terms of the Joint Stipulation (joint # 3) the parties also agree that additional temporary benefits will be paid up to October 27, 2006.... [I]t is clear that the parties intend that the entire 104 week period of temporary benefits authorized by law should be paid for the disability sustained by the Claimant in that [the October 27, 2004] accident.
Later, at a motion hearing, the judge of compensation claims stated that the disability "for which the one hundred and four weeks of compensation [were or were to be] paid" was "the disability that occurred because of the injury on October 27, 2004, which was the humeral head injury."
[2] Here, as below, they argue that the full 104 weeks of benefits for temporary disability on account of the injury to her knees are not available because of the disabling injury she received to an upper extremity in a separate industrial accident ten days later.
[3] With respect to the October 17, 2004 accident, the judge of compensation claims awarded temporary benefits from October 26, 2006 through January 11, 2007, a total of eleven weeks.