CORTINAS, J.
 

 In June 2008, Delma Mercado’s employment at the Hialeah Housing Authority (“Housing Authority”) was terminated. The grounds for Mercado’s termination included failure to perform her work duties, repeated mathematical errors in accounts receivable reports, failure to collect and post tenants’ rents accurately and in a timely manner, and failure to timely and accurately prepare bank deposits. Shortly after being terminated, Mercado applied for unemployment benefits. The Agency for Workforce Innovation (the “Agency”) granted Mercado’s application. The Housing Authority appealed the award of unemployment benefits and attached to the letter of appeal a published newspaper article reporting that Mercado was facing 82 counts of forgery, fraud, and grand theft.
 

 A telephonic hearing was subsequently held before an appeals referee. At the hearing, the Housing Authority presented testimony from four witnesses, including the Housing Authority’s director of finance. Despite written notice and two attempts by the referee to reach Mercado by phone, she failed to appear for the telephonic hearing. Though the Housing Authority presented unrefuted testimony regarding the reasons for Mercado’s termination, the appeals referee found that Mercado had not been discharged for “misconduct connected with work,” and ■was, therefore, entitled to unemployment benefits. The Housing Authority sought review of the appeals referee’s decision from the Unemployment Appeals Commission (“UAC”), which entered an order affirming the referee’s decision. We reverse.
 

 Whether an employee has committed misconduct connected with work is determined by section 443.036, Florida Statutes (2008), which provides, in pertinent part:
 

 (29) “Misconduct” includes, but is not limited to, the following, which may not be construed in pari materia with each other:
 

 (a) Conduct demonstrating willful or wanton disregard of an employer’s interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee; or
 

 (b) Carelessness or negligence to a degree or recurrence that manifests culpability, wrongful intent, or evil design or shows an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his or her employer.
 

 The determination of “[w]hether a claimant commits misconduct connected with work is a question of law.”
 
 Sauerland v. Fla. Unemployment Appeals Comnn’n,
 
 923 So.2d 1240, 1241 (Fla. 1st DCA 2006) (citing
 
 Saunders v. Unemployment Appeals Comm’n,
 
 888 So.2d 69, 71-72 (Fla. 4th DCA 2004)). An appeals referee’s findings of fact, however, “must be accepted if supported by competent, substantial evidence.”
 
 Id.
 
 (citing
 
 James D. Hinson Elec. Contracting Co. v. Fla. Unemployment Appeals Comm’n,
 
 914 So.2d 1033 (Fla. 1st DCA 2005)).
 

 Section 120.68, Florida Statutes (2008), addressing judicial review of an order of an administrative agency, provides, in pertinent part:
 

 (7) The court shall remand a case to the agency for further proceedings consistent with the court’s decision or set aside agency action, as appropriate, when it finds that:
 

 [[Image here]]
 

 
 *218
 
 (b) The agency’s action depends on any finding of fact that is not supported by competent, substantial evidence in the record of a hearing conducted pursuant to ss. 120.569 and 120.57; however, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact;
 

 (emphasis added).
 
 See also Porter v. Florida Unemployment Appeals Comm’n,
 
 1 So.3d 1101 (Fla. 1st DCA 2009) (“[T]his court must reverse the [Unemployment Appeals] Commission’s decision to affirm the referee’s findings where, as here, competent, substantial evidence does not support the findings.”);
 
 Thorkelson v. N.Y. Pizza & Pasta, Inc.,
 
 956 So.2d 542, 545 (Fla. 1st DCA 2007).
 

 The appeals referee’s findings of fact remain undisturbed if they are supported by competent, substantial evidence in the record of the hearing. Although we cannot substitute our judgment for the referee’s on the weight of the evidence on a disputed finding of fact, as set forth in section 120.68(7)(b), we note that Mercado failed to appear at the telephonic hearing or provide any evidence in her defense, and as such, the evidence set forth by the Housing Authority was, in effect, undisputed.
 

 In affirming the appeals referee’s findings, the UAC stated that “[t]he referee discounted certain evidence presented by the employer because it was hearsay.” However, there is no elaboration on what specific evidence was discounted. The UAC also stated that “[a]t the time of the hearing, the employer presented insufficient competent evidence to establish the claimant was culpable of criminal activity,” and that “[u]pon review, the [UAC] concludes that the record adequately supports the referee’s findings. Moreover, the referee’s decision is a reasonable application of the pertinent laws to the facts of the case.” We find that the findings and decision of the appeals referee, and consequently, the affirmance by the UAC, are unsupported by competent, substantial evidence in the record.
 

 Nelson Lara, the Housing Authority’s director of finance, testified that problems arose involving the receipt and crediting of tenant payments, but his staff was unable to obtain from Mercado satisfactory explanations for those problems. Lara further testified:
 

 Lara: [W]e conducted an investigation of, of our records and we found as we interviewed some of our, of our tenants that according to our records had not paid rent but the tenants were able to provide copies of the money orders with which they had made a payment of the rent. We then went to our bank records and looked for copies of those
 
 money
 
 orders deposited into our bank account but we could not find them. So evidently, the rent had been paid but the money order had not reached, reached our bank account.
 

 [Housing Authority counsel]: Who were the money orders written out to?
 

 Lara: The money orders were written out to HHA meaning Hialeah Housing Authority.
 

 [Housing Authority counsel]: Yet these money orders were never reflected in the bank account, the Hialeah Housing Authority bank account?
 

 Lara: They, they were never deposited.
 

 [Housing Authority counsel]: Okay, and how did you resolve this matter?
 

 Lara: Well then since we had a copy from the tenant of the payment made and we had no deposit we contacted the money order issuing company and requested copies of those money orders
 
 *219
 
 and the, this company provided the, the copies of the cashed money orders that had been cashed at the check cashing store and the, the money orders were had [sic] indeed been cashed at a check cashing store.
 

 [Housing Authority counsel]: And who cashed these money orders?
 

 Lara: The money orders had been cashed by Delma Mercado and they were endorsed by Ms. Mercado as such.
 

 [Housing Authority counsel]: What did you do at this time when you had this information?
 

 Lara: Well the I[sic] notice also that the, the letters HHA on the, on the money order [sic] had been altered and made into the name Delma Mercado and then once that I received that I, I reported it to our Executive Director.
 

 [[Image here]]
 

 [Housing Authority counsel]: Can you estimate as to how many tenants did not have credit for the monies that they paid to the Hialeah Housing Authority?
 

 Lara: According to my, my investigation I, I found that a total of 167 checks or money orders were missing ...
 

 In addition to testimony, the appeals referee had also been provided, prior to the hearing, with a copy of a newspaper article reporting that Mercado had been released from her job and was facing 82 counts of forgery, fraud, and grand theft.
 

 “[D]ishonesty is and should be grounds for dismissal and denial of benefits .... ”
 
 Sauerland,
 
 923 So.2d at 1241 (quoting
 
 Johnson v. Unemployment Appeals Comm’n,
 
 680 So.2d 1073 (Fla. 5th DCA 1996)). The UAC cites to case law for the proposition that “misconduct usually involves repeated violations of explicit policies after several warnings.”
 
 See Grossman v. J.C. Penney Co. 2071,
 
 689 So.2d 1206, 1207 (Fla. 3d DCA 1997) (citing
 
 Fiedler v. Burdines, Inc.,
 
 654 So.2d 1276, 1277 (Fla. 2d DCA 1995)). We find these cases distinguishable in that they involved isolated incidents of what was, arguably, poor judgment. In contrast, as demonstrated by Lara’s testimony, the Housing Authority’s internal investigation yielded information indicative of continued acts “demonstrating willful or wanton disregard of an employer’s interests and found to be a deliberate violation or disregard of the standards of behavior which the employer has a right to expect of his or her employee.”
 
 See
 
 § 443.036(29)(a), Fla. Stat. (2008).
 

 Counsel for the Housing Authority advised the appeals referee of the ongoing criminal investigation against Mercado and requested “some leeway” with the evidence and testimony provided, so as not to hinder or adversely affect the investigation. Moreover, after addressing, in her closing statement, the language in the termination letter regarding the failure to collect and accurately post rent payments, the Housing Authority’s counsel again reiterated:
 

 The letter, her termination letter advised her regarding these issues. There was nothing more specific at this time due to the fact as I stated that there was a larger, pending criminal investigation that needed to be protected in order for the Hialeah Housing Authority to protect both its reputation and financial interest.
 

 Clearly, the lapses in job performance cited in Mercado’s termination letter, including the failure to properly post payments, the collection of partial rent from tenants, constituted work misconduct separate and apart from alleged criminal wrongdoing. The Housing Authority, based on the uncontroverted evidence, became aware of Mercado’s machinations well before terminating her employment.
 
 *220
 
 The reasons cited for her termination, while not specifically accusing her of criminal behavior, are entirely consistent with her release on grounds of misconduct. Moreover, as highlighted by the Housing Authority’s counsel, specific details regarding the alleged criminal acts were not disclosed in the termination letter in an effort to avoid compromising the ongoing criminal investigation. Because the findings of the appeals referee are not supported by competent, substantial evidence in the record, we reverse the UAC’s order affirming the referee’s determination of entitlement to benefits.
 

 Reversed and remanded.