EMAS, J.

FACTS

Juan Crespo (“Crespo”) was employed as an armed security guard by Doyon Security Services (“Doyon”) from July 6, 2009 to September 28, 2011. On the day he was discharged, Crespo was an assigned perimeter officer at an Immigration and Customs Enforcement (“ICE”) detention facility. This required him to rove the outside perimeter of the detention facility in his company vehicle. When he arrived at his post on September 28, Crespo discovered he did not have all the necessary paperwork required to fulfill his security duties. He drove in his company vehicle to the detention facility office and parked the vehicle in a space designated for ICE employees only. Because he was not permitted to bring his firearm into the facility, Crespo placed his loaded firearm in the unlocked glove compartment of his vehicle, locked the vehicle, and then entered the facility to obtain the missing paperwork.[1]
*51 Crespo was later called in by his supervisor and terminated for (1) leaving his assigned post; (2) parking in an unauthorized parking space; and (3) leaving his loaded firearm in the glove compartment of his vehicle.
Crespo filed a claim for unemployment benefits, which was initially granted by the claims adjudicator because “the discharge was for reasons other than misconduct connected with the work.” Doyon appealed this decision, asserting Crespo “was discharged for violation of a reasonable and known policy” by negligently storing his service weapon in a glove compartment with no locking mechanism instead of using his assigned gun locker. Doyon asserted this was “deliberate and willful misconduct connected to the work.” Following a hearing by an appeals referee, the initial determination of the claims adjudicator was reversed. Crespo appealed the referee’s decision, and it was affirmed by the Reemployment Assistance Appeals Commission (“the Commission”). Crespo appeals that order. For the reasons that follow, we reverse.
The only issue for our review is whether Crespo was discharged for violation of a reasonable and known policy by storing his service weapon in the unlocked glove compartment of his locked vehicle, rather than storing it in his assigned gun locker.[2] Both Crespo and a Doyon representative attended the hearing held by the appeals referee. At that hearing, the evidence established that:
1. The area where Crespo parked his vehicle is the main facility entrance where detainees and visitors arrive and exit;
2. Crespo was assigned a gun locker for storage of his service weapon, but on the date in question, chose to leave his weapon in the glove compartment of his locked company truck because doing so allowed him to return to work more quickly;
3. Crespo maintained visual contact of his vehicle while in the facility and believed leaving his weapon in the glove compartment was safe;
4. The only written policy provided by Doyon to Crespo regarding weapon storage states that officers must “always store the gun in a safe place” and the term “safe place” is not defined in the policy;
5. Crespo testified he was aware at the time of the hearing it was Doyon’s position that leaving his weapon in the glove compartment of his company vehicle was a violation of the company policies and procedures.[3]
Following the hearing, the appeals referee issued her determination, reversing the determination of the claims adjudicator and disqualifying Crespo from receiving benefits, based on her finding that Crespo *52 was discharged for violating an employer policy, of which he was aware, and which he admitted violating. According to the appeals referee, this “failure to follow the policy was a deliberate disregard of the claimant’s duties and obligations to the employer, amounting to misconduct connected with work within the meaning of the law.” The Commission affirmed the decision of the appeals referee, and this appeal followed.

ANALYSIS

Section 443.101, Florida Statutes (2011), provides, “[a]n individual shall be disqualified for benefits: (l)(a) For the week in which he or she has voluntarily left work without good cause ... or has been discharged by the employing unit for misconduct connected with his or her work, based on a finding by the Department of Economic Opportunity.” The term “misconduct” is defined, in section 443.036(30), as:
(a) Conduct demonstrating conscious disregard of an employer’s interests and found to be a deliberate violation or disregard of the reasonable standards of behavior which the employer expects of his or her employee.
(b) Carelessness or negligence to a degree or recurrence that manifests culpability or wrongful intent, or shows an intentional and substantial disregard of the employer’s interests or of the employee’s duties and obligations to his or her employer.
(c) Chronic absenteeism or tardiness in deliberate violation of a known policy of the employer or one or more unapproved absences following a written reprimand or warning relating to more than one unapproved absence.
(d) A willful and deliberate violation of a standard or regulation of this state by an employee of an employer licensed or certified by this state, which violation would cause the employer to be sanctioned or have its license or certification suspended by this state.

(e)A violation of an employer’s rule, unless the claimant can demonstrate that:

1. He or she did not know, and could not reasonably know, of the rule’s requirements;

2. The rule is not lawful or not reasonably related to the job environment and performance; or

3. The rule is not fairly or consistently enforced.

Subsection (e) of section 443.036 (underlined above) was added by the legislature and became effective June 27, 2011. Accordingly, although the prior case law interpreting “misconduct” establishes that an isolated incident by an employee not following an employer policy does not rise to the level of misconduct necessary to disqualify the employee from unemployment benefits, see e.g., Hernandez v. Am. Gen. Fin. & Fla. Unemployment Appeals Comm’n, 39 So.3d 476 (Fla. 3d DCA 2010), the addition of this new subsection expresses the legislative intent that a claimant may be disqualified from benefits where it is established he or she committed a “violation of an employer’s rule.” Once such a violation is established, the burden shifts to the claimant to establish he did not know the rule’s requirements, that the rule is illegal or not reasonably related to the job, or that the rule is not fairly or consistently enforced. § 443.036(30)(e), Fla. Stat. (2011).
“The determination of whether a claimant commits misconduct connected with work is a question of law.” Hialeah Hous. Auth. v. Fla. Unemployment Appeals Comm’n, 16 So.3d 216, 217 (Fla. 3d DCA 2009). However, this Court “should not disturb the action of the [Commission] *53 unless there is a lack of competent, substantial evidence to support the action.” Salinas v. E. Aero Marine, 908 So.2d 1169, 1171 (Fla. 3d DCA 2005). “An appeals referee’s findings of fact ‘must be accepted if supported by competent substantial evidence.’ ” Hialeah Hous. Auth., 16 So.3d at 217 (quoting Sauerland v. Fla. Unemployment Appeals Comm’n, 923 So.2d 1240, 1241 (Fla. 1st DCA 2006). See also Cruz v. Unemployment Appeals Comm’n, 901 So.2d 1010, 1012 (Fla. 4th DCA 2005) (stating “[i]n reviewing the UAC’s determination that Cruz was guilty of misconduct, a question of law, this court’s role is limited to ascertaining ‘whether the interpretation is clearly erroneous’ ”).
In the instant case, the employer’s rule required Crespo to “always store the gun in a safe place.”[4] Doyon failed to establish there was a policy requiring Crespo to “always store the gun in his gun locker” or a rule prohibiting Crespo from storing the gun in the glove compartment of a locked vehicle.[5]

CONCLUSION

Accordingly, we reverse and remand for the Commission to reinstate the finding of the Department of Economic Opportunity Unemployment Compensation Program, entered on November 30, 2011, finding unemployment benefits payable to Juan Crespo and charged to the employer’s account.

. Although Crespo admitted he was assigned a gun locker, Crespo maintained there was no policy against him storing his weapon in the company truck and he believed the weapon *51 was in a safe place when he left it in the vehicle and kept visual contact on the vehicle while he was in the facility.

. Having reviewed the record below in light of the statutory requirements of section 443.036(30), Florida Statutes (2011), we determine there is no competent substantial evidence to support the Commission’s order on the other issues.

. The Commission argues the record establishes Crespo knew, at the time of the conduct in question, that his actions violated company policy. This is not correct. The record instead reveals that, at the time of the hearing, Crespo acknowledged he was aware Doyon was taking the position that Crespo's conduct violated company policy. Crespo has contended throughout he was not aware his employer prohibited him from storing his gun in the glove compartment of a locked vehicle, or that his employer established a policy that the glove compartment of a locked vehicle was not a "safe place.”

. Although not dispositive in this case, the Florida legislature has specifically established, in section 790.251(3), Florida Statutes (2011), that "no citizen can or should be required to waive or abrogate his or her right to possess and securely keep firearms and ammunition locked within his or her motor vehicle by virtue of becoming a customer, employee, or invitee of any employer or business establishment within the state, unless specifically required by state or federal law.” While this statutory provision is, for other reasons, inapplicable to the present situation, it is significant that the legislature deems the storage of a firearm in a locked vehicle to be "securely ke[pt].”

. Notably, while this appeal was pending, the Commission sought an order from this Court relinquishing jurisdiction to it "for entry of an order remanding the case to the referee to properly develop the record regarding the employer's policies and render a new decision that contains specific findings of fact and a proper analysis of those facts.” It is difficult to reconcile the Commission's pleading with its argument that there was sufficient competent evidence to support the findings of the appeals referee. Although we denied the Commission's motion to relinquish, we have properly considered, in determining the merits of this appeal, the positions set forth in that motion. See e.g., Reynolds v. Singletary, 677 So.2d 988 (Fla. 1st DCA 1996).