IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BEACH COMMUNITY BANK,

     Appellant,

v.

JOYCE ARNETTE and
REEMPLOYMENT
ASSISTANCE APPEALS
COMMISSION,

     Appellees.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D14-2727

Opinion filed June 2, 2015.

An appeal from an order of the Reemployment Assistance Appeals Commission.

Charles F. Beall, Jr. and Kimberly S. Sullivan of Moore, Hill & Westmoreland, P.A., Pensacola, for Appellant.

Amanda L. Neff, Executive Senior Attorney, Reemployment Assistance Appeals Commission, Tallahassee, for Appellees.

BILBREY, J.

     The former employer, Beach Community Bank (the Bank), appeals final agency action by the Reemployment Assistance Appeals Commission (RAAC) that affirmed the appeals referee's determination that the claimant, Joyce Arnette, was

qualified for benefits under the applicable statutes. The RAAC's order and the underlying appeals referee determination applied the statutory definition of "misconduct" found in section 443.036(29), Florida Statutes (2014),[1] to the undisputed facts presented at the administrative hearing. Both the referee and the full Commission concluded that the claimant was not discharged for misconduct connected with her work, and was therefore not disqualified for benefits under section 443.101, Florida Statutes. Because the Bank fails to show any ground upon which the RAAC's order must be set aside, the RAAC's order is affirmed.

Although not discussed by either party in the briefs, judicial review of final agency action, including judicial review of a final order of the RAAC relating to reemployment assistance, is governed by section 120.68, Florida Statutes. Under section 120.68(8), this court is required to affirm the agency's action unless it finds a ground to set aside, modify, remand, or order other relief. The statutory grounds requiring this court to set aside, modify, remand, or order other relief, are listed in section 120.68(7).

The Bank does not challenge any procedural aspect of the RAAC's determination or the evidentiary support for any findings of fact upon which the final agency action is based. Rather, the Bank asserts that the RAAC's affirmance of the appeals referee's determination that the claimant was not discharged for

---

[1] Formerly section 443.036(30), Florida Statutes (2013).

2

misconduct as defined by section 443.036(29), is an erroneous application of the statute to the facts of this case. Although not specifically referenced in the Bank's briefs, we construe the Bank's argument as an attempt to set aside the RAAC's order as an erroneous interpretation of a provision of law or an exercise of discretion in violation of a statutory provision, pursuant to section 120.68(7)(d) and (7)(e)4.

The facts were undisputed that the claimant was employed by the Bank as a teller and customer service representative from March 31, 2008 through July 26, 2013. The Bank's president testified that he was aware of the claimant's husband's business connections and membership in a limited liability company as early as 2009. The president explained that the Bank had loaned funds to a trust in 2009, assets were exchanged and transferred among various entities including the LLC, and eventually the loan to the trust went into default. In an effort to recoup its funds from the trust, the Bank brought a foreclosure action in 2013 against several defendants, including the LLC managed by the claimant's husband.

There were no facts suggesting that the claimant was involved or even aware of her husband's business dealings with the LLC, exchanges of assets, or any loans or other transactions involving her employer, the Bank. Both the claimant and her husband testified that the claimant had no knowledge of any of the husband's business dealings and did not participate in those dealings in any way. The appeals

3

referee found that the claimant was not aware of her husband's activities with the LLC. The Bank's president testified that the claimant was a good employee with a positive work ethic and that he had no complaints about her job performance. However, in July, 2013, in the course of defending against the Bank's foreclosure action, the LLC's attorney filed a motion to set aside a clerk's default and a motion to dismiss the foreclosure complaint.

Upon learning of the filing of the LLC's motions in the pending lawsuit, and upon confirmation that the claimant's husband remained the managing member of the LLC, the president of the Bank directed that the claimant be sent home, suspended from her employment with pay, and instructed to "resolve the conflict" created by the LLC's "obstruction" of the Bank's foreclosure action. There was no evidence that the claimant was aware of the foreclosure action or that she understood that the purported "conflict" referred to by the Bank employees who sent her home consisted of the adversarial relationship due to the ongoing lawsuit between her employer and the LLC her husband managed. The claimant's husband met with the Bank president the following week to discuss the situation, but the husband did not instruct the attorney for the LLC to withdraw the defensive motions in the pending foreclosure action. The claimant's employment was then terminated due to what the Bank labeled a "conflict of interest."

The Bank maintains that the claimant was disqualified from reemployment

4

benefits by section 443.101 because she was discharged for "misconduct connected with . . . her work." § 443.101(1)(a), Fla. Stat. The Bank relies on the definition of "misconduct" contained in section 443.036(29), specifically the "misconduct" described in subsection (29)(e): "violation of an employer's rule."

The employer's rule at issue here is contained in the Bank's Code of Ethics Policy, particularly the sections dealing with "conflicts of interest." Section 1. of the Policy defines conflict of interest as "any situation where an individual has two or more duties or interests that are mutually incompatible." Pursuant to the Policy, employees of the Bank are "expected to conduct" their personal business and activities "in a manner that avoids conflict of interest" with the Bank. The Policy does not flatly prohibit conflicts or provide for immediate termination if a conflict arises. Considering the appeals referee's findings that the claimant lacked knowledge of her husband's activities managing the LLC, the Bank asserts on appeal that the claimant's knowledge was irrelevant and did not excuse her violation of the Bank's Policy. The Bank relies on the provision in its definition of conflict of interest which states: "A conflict of interest can also arise if you inadvertently engage in activities that compete with or damage the bank."

Section 3. of the Bank's Policy addressing conflicts of interest through family members provides that "[a] possible conflict of interest exists whenever . . . [an] employee, or a member of his or her immediate family has an interest, direct

5

or indirect, in any entity dealing with the bank and the interest is of such an extent or nature that his or her decision might be affected or determined by it." The Policy requires disclosure of such interest of a family member to the Bank's CEO and Board of Directors, but the Policy does not require the employee to arrange for the family member's immediate divestment of such interest in order to avoid termination of employment. There was no evidence presented at the administrative hearing that any of the claimant's decisions (in her position as a teller and customer service representative) might be affected or determined by her husband's interest in the LLC. The nature of any "decisions" to be made by a bank teller was never addressed. The undisputed evidence was that at the time the Bank raised the issue, the claimant did not even know about her husband's status as a managing member of the LLC and was unaware of the foreclosure action.

The Bank's president testified that the claimant violated the Bank's Policy to avoid the conflict of interest in that, "Ms. Arnette had an obligation to either remove herself and her immediate family member from the situation creating the conflict, such as by divesting ownership of [the LLC] or instructing their attorney to withdraw the two motions, or to immediately resign her position with Beach." Her employment was terminated for failing to "remove" the conflict.

In light of the express terms of the Bank's Policy addressing conflicts of interest, and the uncontroverted facts presented to the appeals referee, the RAAC's

6

final order correctly adopted the referee's decision that the claimant was not disqualified from reemployment benefits. The Bank failed to establish that the claimant actually violated any terms of its conflict of interest Policy, as was its initial burden. Critical Intervention Servs. v. Fla. Reemployment Assistance Appeals Comm'n, 106 So. 3d 63 (Fla. 1st DCA 2013). The claimant did not, even inadvertently, "engage in activities" damaging to the Bank as described in section 1. of the Policy by being married to the managing member of an LLC who had been sued -- unbeknownst to the claimant -- by the Bank. Likewise, the claimant did not violate section 3. of the Policy by failing to disclose a business interest of her husband which might have affected any decision she might make in her position as a teller and customer service representative. The Bank fails to refer to any language in its Ethics Policy requiring the claimant to convince her husband to drop the LLC's defense to the Bank's lawsuit in order to avoid termination of employment. The Bank's expansive interpretation of its conflict of interest Policy adds duties not provided for in the rule and is ineffective to establish a violation of the rule by the claimant. See Crespo v. Fla. Reemployment Assistance Appeals Comm'n, 128 So. 3d 49 (Fla. 3d DCA 2012).

Under the circumstances, the referee's decision that the claimant was qualified for benefits because she was not discharged for misconduct connected with her work, and the RAAC's order affirming that determination, were correct

7

applications of sections 443.036(29) and 443.101 to the uncontroverted facts. No ground for reversal under section 120.68(7) has been shown. Accordingly, the final agency action by the RAAC is AFFIRMED.

MARSTILLER, J., CONCURS, and THOMAS, J., CONCURS IN RESULT ONLY.