PER CURIAM.
‘ In this workers’ compensation case, the Employer/Carrier (E/C) challenges the Judge of Compensation Claims’ (JCC’s) rejection of its misconduct defense under paragraph 440.15(4)(e), Florida Statutes (2013). Claimant cross-appeals the JCC’s denial of her claim for an alternate neurologist. Although we affirm the JCC’s order in all respects, we write-to discuss the meaning of “misconduct” under subsection 440.02(18), Florida Statutes (2013), when an employee expresses anger about a co-employee’s actions.
I.
Claimant, an office worker in a car dealership, sustained compensable workplace injuries to her head, neck, low back, and left knee as a result of two accidents occurring in 2013. In both, Claimant was injured at work when she was struck by a door opened by a co-worker. Claimant had previously filed a harassment complaint against the co-worker who she believed had intentionally injured her (the record does not reflect what action, if any, was taken against the co-worker). Claimant admitted that she became angrier with the co-worker after the second accident.
Claimant received authorized medical care for her physical injuries, was assigned certain medical restrictions, and subsequently returned to work with accommodations. In November of 2013, Claimant filed petitions for benefits (PFBs) seeking authorization of a neurologist and a psychiatrist (as recommended by the authorized orthopedist) and payment of temporary partial disability (TPD) benefits. On January 27, 2014, during a hearing on a discovery matter, Claimant’s attorney an-’ nounced that Claimant was “getting- increasing[ly] angry and hostile and showing symptoms of psychiatric stress.” At one point, he suggested that an emergency psychiatric hearing was necessary because something bad might 'happen. When the JCC requested more specific evidence to warrant an emergency hearing, Claimant’s attorney stated that Claimant had “discussed homicide and suicide, but not to the level where it’s Baker Actable.” He later summarized that “Claimant has expressed suicidal and homicidal ideation, but not to the degree of [imminent] threat” although there “is a potential emergency psychiatric situation.” Ultimately, the JCC concluded that, despite the lack of medical evidence, an emergency conference was warranted based on the Claimant’s attorney’s representations.
That evening, the Employer terminated Claimant’s employment based on Claimant’s attorney’s representation. The Employer also called the police to obtain a “no trespass” order. Witnesses for the Employer later testified that they had no knowledge of any actual threats made by Claimant, but considered her thoughts enough of a threat to jeopardize the safety of other employees. The E/C subsequently amended its defenses to say that Claim *598 ant is ineligible for TPD benefits because she was terminated for misconduct. § 440.15(4)(e), Fla. Stat. .
Claimant underwent two psychiatric examinations. Although- she admitted to making .statements that she .felt like “punching the lights” out of her co-worker, both psychiatrists concluded that Claimant did not present evidence of imminent threat to herself or others. One. of the ■psychiatrists described Claimant’s expressions of anger, as “blowing off steam”, as opposed to a declaration of an intent to inflict physical harm. Following the last psychiatric evaluation, the E/C agreed to authorize a psychiatrist to treat' Claimant’s injury-related symptoms of depression.
Relative to the unresolved TPD claim, Claimant’s attorney objected, based on -attorney-client privilege, to the questions posed to Claimant during a merits hearing concerning her conversations with her attorney. The JCC allowed a proffer of Claimant’s testimony that she told her attorney that she would like to punch the coworker but that she had ■ no idea what triggered her 'attorney’s belief that, she had homicidal ideations. Claimant presented testimony from Ms. Navas, another co-worker, who said Claimant shared her thoughts of punching the co-worker. On cross-examination, Ms. Navas clarified that Claimant never told her that she was actu-, ally going to hurt the co-worker. The coworker testified at the hearing, .stating that Claimant never harmed her or told her she would harm her.
On March .9, 2015, the JCC entered an order rejecting the E/C’s misconduct defense and ordering the payment -of TPD benefits from the date of Claimant’s termination. In the order, the JCC found that Claimant had established a prima, facie claim for- TPD benefits and that the E/C had not established misconduct because no evidence existed that Claimant intended, or reasonably expected, that the Employer would learn of her statements.
II.
Because the E/C does not challenge the JCC’s finding that Claimant met her prima facie’burden--of proof for the benefits sought, the issue we address is whether the E/C established its affirmative defense based on termination for misconduct. § 440.15(4)(e), Fla. Stat. (2013). The statutory definition of “misconduct” is as follows:
“Misconduct” includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct - evincing such .willful or wanton disregard of an employer’s interests as is found in deliberate violation or disregard of standards of behavior which the employer has.the right to expect of the employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or to show an intentional and substantial disregard of an employer’s interests or of the employee’s duties and obligations to the employer.
Here, the E/C’s allegation of misconduct is premised solely on Claimant’s attorney’s statement that Claimant shared that she had suicidal and homicidal thoughts arising from her injuries. Based on the evidence presented, the JCC found tliat Claimant’s statements to her' attorney did' not constitute “misconduct” as defined by the statute because there was no evidence that Claimant intended,'or reasonably expected, that the Employer would leárn of her statements.
.On appeal, the E/C disputes the JCC’s finding and argues the requisite in-tent was demonstrated because Claimant *599 intended to harm or kill her co-worker;[1] further, it is irrelevant that Claimant spoke only to her attorney and did not actually threaten anyone. In making these arguments, the E/C overstates the facts and seeks to blur the line between thoughts or ruminations of an employee to her attorney and the standard of conduct required under the statute to establish misconduct. The statute addresses only intentional or deliberate conduct that violates standards of behavior or the employer’s interests. Malevolent thoughts alone, without the requisite evidence establishing an intent to harm, do not meet the definition. This is not to say that such thoughts, if they become known to an employer, may not constitute good cause for taking appropriate disciplinary action; they do not, however, constitute “misconduct” by operation of law for purposes of ' section 440.15(4)(e). Termination for “good cause” is not the same as termination for “misconduct,” the latter a more stringent eviden-tiary standard. See Thorkelson v. N.Y. Pizza & Pasta Inc., 956 So.2d 542, 543 (Fla. 1st DCA 2007) (affirming application of paragraph 440.15(4)(e) with evidence of termination for misconduct because “[c]learly a claimant is not disqualified from workers’ compensation benefits just because she ‘was terminated ... for cause’ ”). We take no position on the propriety or validity of the termination.
In making his findings,. the JCC was presented with no evidence that Claimant had any intent whatsoever to act upon her expressed ideations. Her attorney said there was no imminent danger (just an urgent need for care), the co-worker said no threats were made or harm occurred, and another co-worker said that Claimant’s statement did not express an intent to actually punch anyone. Competent substantial evidence supports the JCC’s findings of no misconduct. See Thorkelson, 956 So.2d at 545 (“‘Whether a claimant commits misconduct connected with work is a question of law, [but the] findings of fact [on which the legal question is based] must be accepted if supported by competent, substantial evidence.’ ”) (quoting Sauerland v. Florida Unemplmt. App. Comm’n, 923 So.2d 1240, 1241 (Fla. 1st DCA 2006)).
We note the E/C’s beliefs that it is being punished for taking action in terminating Claimant’s employment and that Claimant is being rewarded for her “bad thoughts.” As to the latter point, Claimant has job-related injuries and lost her job based on ideations (that amounted to “blowing off steam”) arising from her workplace injuries; in seeking benefits, she lost the usual privacy considerations that attach to’ medical information. See § 440.105(b), Fla. Stat. (2013) (making unlawful any statement, presented for any claim or payment of benefit, that contains any false, incomplete, or misleading information). As to the former point, nothing has changed the ability of employers to take actions they deem appropriate to safeguard their workplaces; but when they seek to deny benefits based on employee “misconduct” they must present evidence and prove their de-fensé, which the E/C failed to do in this case. The order below is AFFIRMED.
WETHERELL, MAKAR and WINOKUR, JJ., concur.

. Contrary to the ássumption of both the E/C and the JCC, Claimant’s attorney did not identify the- name of the co-worker who was the focus of Claimant’s ideations.